THE CITY OF ELIZABETH v. THE CENTRAL RAILROAD
COMPANY OF NEW JERSEY.

1. According to the Colonial act, passed June 20th, 1765 (*All. L., p.* 269),
   there existed, at and after the passage of the act, a public highway,
   six rods wide, extending through the Elizabethtown Point tract to the
   waters of Arthur's Kill.
2. Prior to November 12th, 1874, there was a public highway extending
   through the Elizabethtown Point tract to the waters of Arthur's Kill,
   and on that day the State of New Jersey granted to the Central Rail-
   road Company of New Jersey the land below the original high-water
   line in front of the highway, with all the rights of the state therein.
   *Held,* that the highway did not thereafter extend below the original
   high-water line over land artificially reclaimed. *Hoboken Land and
   Improvement Company* v. *Hoboken,* 7 *Vroom* 540, distinguished, and
   *Hoboken* v. *Pennsylvania Railroad Co.,* 124 *U. S.* 656, followed.
3. A private grant of the state, obtained by false suggestion, is not deemed
   void in collateral proceedings if the false suggestion does not appear
   on the face of the grant.

On rule to show cause why a verdict for the plaintiff in
ejectment should not be set aside.

Argued at February Term, 1891, before BEASLEY, CHIEF
JUSTICE, and Justices GARRISON and DIXON.

For the plaintiff, *Frederick W. Marsh* and *Frank Bergen.*

For the defendant, *Fred. W. Stevens* and *Benjamin Wil-
liamson.*

The opinion of the court was delivered by

DIXON, J. The main question in this controversy is,
whether the disputed land, which has a width of ninety-four
feet fronting upon the waters of Arthur's Kill, at Elizabeth,
and a depth of about one hundred and thirty-two feet, is a
public highway or not.

The first subsidiary question involves the construction of a
colonial statute, passed June 20th, 1765 (*All. L., p.* 269), en-

titled "An act to alter so much of the road leading from Elizabethtown to the point commonly called Elizabethtown Point as goes through the tract called the Point Tract, and laying out a straight road through the same."

This act was passed on the petition of the owners of the Point Tract, and its recitals are undoubtedly to be attributed to them as well as to the public; consequently, its evidential force is convincing.

Both parties agree that the Point Tract, mentioned in the statute, bordered upon the waters of the Kill, and that the road referred to is the highway now claimed by the plaintiff to extend over the *locus in quo.*

The plaintiff insists that this act describes the road as reaching to the waters of the Kill, and leaves unchanged so much of the road as lay between the water line and the Point House, which stood several hundred feet inland, while the defendant contends that the road is defined as stopping at the Point House, or, if not, is, by the act, vacated between the Point House and the shore.

The stronger reasons appear to us to favor the claims of the plaintiff. That the road described extended to the waters of the Kill is inferable—*first*, because the road was a great public highway across the colony, laid out probably in the seventeenth century, and there is much more likelihood that such a highway would be continued to the neighboring public waters than that it would end on private property a few hundred feet away from them; *secondly*, the recital in the act that the road passed *through* the Point Tract shows that it ran from border to border. That the statute was not intended to vacate that part of the road lying between the Point House and the Kill seems probable—*first*, from the general purpose manifested on the face of the act, merely to straighten the road between the Point House and the northerly boundary of the tract, for the advantage both of the public and of the owners, a purpose to which the vacation of the southerly end of the road could in no wise contribute; and, *secondly*, because the title of the act denotes that the straightened road is to go *through* the Point

Tract in the same sense as did the old road. The verbal indications, in the enactment itself, of an intention to vacate the road between the Point House and the Kill, are not clear enough to warrant a conclusion, in the face of these reasons, that so important a public right was to be abandoned.

We, therefore, think it reasonable to assume that, at and after the passage of this act, there was a public highway, six rods wide, extending through this Point Tract to the waters of the Kill.

This conclusion obviates many of the grounds upon which the defendant bases its application for a new trial.

Whether the location of this highway is such that its lines include, or if continued into the water would include, the *locus in quo*, is a question of fact which was much litigated at the trial, and was decided by the jury in favor of the plaintiff. Against the manner in which the evidence as to location was commented upon by the judge, and submitted to the jury, and against their verdict respecting it, we think the defendant presents no just ground of complaint.

There remains for consideration only the grant made to the defendant by the state, through the riparian commissioners, on November 12th, 1874.

At that time the Elizabethport and New York Ferry Company owned the fee of the land over which the highway ran to the Kill, and the defendant was in possession thereof as its lessee, and also had its consent in writing, under seal, that the riparian commissioners might grant the lands in front of the same to the defendant as fully and completely as if the defendant were owner of the shore. According to the deed executed by the commissioners, the State of New Jersey, in consideration of $300,000, granted, bargained, sold and conveyed to the defendant, its successors and assigns forever (among other lands), "all that tract of land in the city of Elizabeth, &c., part of which was formerly under, but now is above, the tide waters of the Arthur Kill or Staten Island sound, and part of which is still under the waters of said sound, described as follows: beginning at the original high-

water mark on the westerly shore of said sound, at a point in line with the centre line of Marshall street extended southeasterly, and from thence running" around a tract having that original high-water mark for its northerly boundary and the exterior wharf line, established by the commissioners, for its southerly boundary, and embracing the lands in front of the disputed highway; "together with all and singular the hereditaments and appurtenances thereunto belonging, and all the rights of the said state in said lands."

By reason of artificial reclamation, the present water line in front of the highway is south of the original high-water mark of the sound, and the question for decision is, whether, in view of this grant by the state, the road extends to the present water line and will continue to such water line as may be hereafter formed, or stops at the original high-water mark.

In *Hoboken Land and Improvement Co.* v. *The Mayor, &c., of Hoboken,* 7 *Vroom* 540, the Court of Errors and Appeals decided that legislative authority granted to individuals or corporations to fill up, occupy, possess and enjoy all land covered with water fronting and adjoining lands owned by them, will not extinguish the public right of access to navigable waters by a street on the lands of such owners, which by dedication terminated at the high-water line, but such street will run to the water over the lands reclaimed under such authority. In *Hoboken* v. *Pennsylvania R. R. Co.,* 124 *U. S.* 656, the Supreme Court of the United States decided that grants made by the State of New Jersey, under her general Riparian act of March 31st, 1869 (*Rev.,* p. 982), secure to the grantees the whole beneficial interest and estate in the property described, for their exclusive use for the purposes expressed in the grants, and exclude every right of use or occupancy on the part of the public, transferring to the grantees or extinguishing every previous right of the state, whether proprietary or sovereign, except such sovereign rights as the state may lawfully exercise over all other private property; and that, in face of such grants, highways running to

the original water line will not be continued to the water line newly formed by filling in the granted area.

The distinction between the subjects on which these judgments were rendered is obvious. In the first case, the party claiming to have extinguished the public right of access to the water over the highway had a mere license to fill in and enjoy undefined land under water as a riparian owner (*New York, Lake Erie and Western R. R. Co.* v. *Yard,* 14 *Vroom* 632), and the license was deemed subject to the implied limitation that the licensee should acquire against the state no greater rights in the land reclaimed than he had in the *ripa* in front of which the reclamation took place. But in the later case, the claimant was the grantee of all the rights of the state in specified lands under water, founding its title upon express words of conveyance, the reasonable force of which excluded the reservation implied against the licensee.

In the present controversy, the defendant cannot claim directly under the act of March 31st, 1869, which was construed in 124 *U. S.* 656, because that statute did not authorize grants of land under water in Arthur's Kill (*Fitzgerald* v. *Faunce,* 17 *Vroom* 536), but subsequent legislation, enacted before the grant to the defendant, in effect extended the provisions of that act to all the tide waters of the state in which exterior lines of solid filling had been or should be established by the riparian commissioners.

The original act of April 11th, 1864 (*Rev., p.* 980), empowered the commissioners to establish such exterior lines in New York bay, the Hudson river, Kill von Kull, Newark bay, Arthur's Kill (Staten Island sound), Raritan bay and the Delaware river opposite to the county of Philadelphia; and the act of March 31st, 1869, section 7, continued in force all the powers and duties of the commissioners, except as superseded or modified by that act, an exception which did not impair the authority to establish exterior lines in Arthur's Kill. By an act approved March 21st, 1871 (*Rev., p.* 985), the commissioners were authorized to lease or grant to *any riparian owner* on tide waters in the state, the lands under

water in front of his lands; by act of April 6th, 1871 (*Rev.*, *p.* 988), they were empowered to execute to *any applicant* leases or grants of any lands lying between original high-water line and the exterior lines established or to be established, with the same effect as if such grants or leases were made under the fourth section of the act of March 31st, 1869, and on the same conditions for the protection of riparian owners as that act of 1869 prescribes; and by act approved March 27th, 1874 (*Rev.*, *p.* 986), it was made lawful for the commissioners to fix the purchase money or rentals to be paid by *any applicant* for so much of the lands below high-water mark, or lands formerly under tide water, belonging to the state, as may be described in any application therefor duly made according to law, and in the name and under the seal of the state to grant or lease said lands to such applicant accordingly.

These laws authorized the commissioners to grant to the defendant the lands described in the deed of November 12th, 1874, and all the rights of the state therein, and gave to such grant the same effect as if it had been made directly under the act of March 31st, 1869, which was the subject of adjudication in *Hoboken* v. *Pennsylvania R. R. Co.*, 124 *U. S.* 656.

Upon the reasons stated in that decision, we, therefore, reach the conclusion that the highway, for which the plaintiff contends, stops at the original high-water line, unless certain propositions now to be noticed prove tenable.

The plaintiff insists that, in applying for the riparian grant, the defendant submitted to the riparian commissioners a map exhibiting an erroneous view of the road now in dispute, and that the commissioners were thereby deceived in making the grant; whereupon the plaintiff urges the common law principle that private grants obtained from the king or state, by false suggestion, are void. But, without mentioning other considerations which might prevent the application of this principle in the present case, it is enough to note that the alleged false suggestion does not appear on the face of the grant; and only when it does is the grant deemed void in

-collateral proceedings. *Legat's Case,* 10 · *Rep.* 109 ; *Gough* v. · *Bell,* 2 *Zab.* 411, 486.

The plaintiff further insists that the · grant having .been made after the decision in 7 *Vroom* 540, and, before that, in 124 *U. S.* 656, the state decision became substantially an ele-' ment of the grant and must be accepted everywhere as a guide' in its interpretation. Had the statute there construed and those now under review been alike, this position of the plaint- iff would be well founded ; for it is a rule of justice that, after the construction of· a state statute or constitution has been set- tled by the highest judicature in the state, the construction is deemed, so far as contract rights acquired under it are con- cerned, as much a part of the enactment as the text itself. *Douglass* v. *County of · Pike,* 101 *U. S.* 677 ; *Burgess* v. *Sel- igman,* 107 *Id.* · 20. But the marked differences between the statute then construed and the statutes now in hand render the rule inapplicable (*Pleasant Township* v. *Ætna Life Ins. Co.,* 138 *Id.* 67), and hence the decision in 7 *Vroom* 540 is not authoritative in the pending controversy.

The plaintiff also urges that the deed of November 12th, 1874, on its face purports to be made under the act of March 21st, 1871, which authorizes grants to riparian owners only, and that as the state was substantially the owner of the *ripa* within the lines of the highway, the grant must *pro tanto* fail. But although the act of March 21st, 1871, alone is mentioned in the deed, it is not referred to as the only source of author- ity for the grant. On the contrary, the grant is made in absolute terms, independent of any riparian title, and without reference to any particular statute ; consequently it must be deemed as comprehensive as the law permitted. That the state may not defeat or impair its absolute grants, made under these riparian statutes, because of the public right to a high- way on the *ripa,* is one of the points decided in 124 *U. S.* 656 ; and although doubts may have been previously ex- pressed concerning it in the state courts, yet now due.regard for uniformity of decision, upon a question affecting so many

important titles in the hands of citizens of other states as well as of our own, constrains us to follow the federal adjudication.

Our conclusion is, that the defendant has title, under its grant of November 12th, 1874, to so much of the *locus in quo* as lies below the original high-water line, and, therefore, the verdict must be set aside.