JULIA A. VAN SCHAICK ET AL. v. THE BOARD OF RI-PARIAN COMMISSIONERS.

Argued November 10, 1911—Decided December 18, 1911.

1. The Court of Chancery upon a bill in the nature of an information filed by the attorney-general at the relation of a private party has jurisdiction to annul a grant of lands under water made by the riparian commissioners to a person not the owner of the shore front. This survival of the most ancient common law office of the Chancellor is a legal remedy administered in equity. The existence of this complete legal remedy renders it an exercise of sound discretion to deny the allowance of a writ of *certiorari* to review in a like case the proceedings of the riparian commissioners on which a grant by them of the state's land was based.

2. The case of *Shamberg* v. *Riparian Commissioners*, 43 *Vroom* 132, explained and distinguished.

On motion for a *certiorari*.

Before Justices GARRISON, PARKER and BERGEN.

For the motion, *Cortlandt Parker*.

*Contra, Gilbert Collins.*

The opinion of the court was delivered by

GARRISON, J. This is an application for a writ of *certiorari*. The objects sought to be obtained by such writ as set forth in the brief of applying counsel are as follows: "The writ is sought to review proceedings of the riparian commissioners in

adopting a map, resolving to grant and making a grant of lands in the waters at the junction of the Navesink or North Shrewsbury river and the South Shrewsbury river."

It will be observed that it is not even definitely assumed that the riparian grant can be canceled upon *certiorari,* but only that the proceedings of the commissioners can be reviewed.

The private grounds upon which the present application is based are that the grantee of the riparian deed was not the owner of the *ripa,* and that of the six islands included therein one was owned by the prosecutors' predecessor in title. The fact, if true, that the other five islands were the property of the state, and that the public was deprived of its right to fish, clam and oyster on the lands conveyed seem to state public rather than private grievances.

The riparian grant that the prosecutors seek to undermine is regular in form and contains the customary proviso that if the grantee is not the owner of the land adjoining the land under water thereby granted, the grant shall, as regards the state, be void. That a riparian grant, if such a false suggestion appear upon its face, may be attacked collaterally in an action of trespass or ejectment is established by the case of *Polhemus* v. *Bateman,* 31 *Vroom* 163, and the cases in which that decision has been followed.

Ejectment will also lie to test the title of the island of which ownership is claimed; hence, apart from the exclusively public grievances, there appears to be no necessity for the use of our prerogative writ in aid of any private right.

This circumstance, combined with the probable futility of a judicial review that could only animadvert upon the proceedings of a state agency, without undoing what had been done, might well lead us to deny the *allocatur* for which application is made even if a more direct and cogent reason did not exist.

Such a reason does, however, exist. In the case of *Attorney-General* v. *Central Railroad Co.,* 16 *Dick. Ch. Rep.* 267, which was a bill filed by the Attorney-General, ex rel. the Chancellor (Magie), after citing the cases of *Elizabeth* v. *Central Railroad Co.,* 24 *Vroom* 491, and Polhemus *v.* Bate-

man, said: "It follows that an attack upon the grant before us can only be made directly and in a proceeding such as that under consideration."

In *Attorney-General* v. *Morris & Cummings Dredging Co.*, 19 *Dick. Ch. Rep.* 555, the jurisdiction of Chancery on the information of the attorney-general at the relation of a private party to annul a state grant of lands under water was considered at length by Vice-Chancellor Emery, and expressly declared. This case was affirmed by the Court of Errors and Appeals. 3 *Robb.* 829.

In *Attorney-General* v. *Central Railroad Co.*, 2 *Robb.* 198, this same jurisdiction was entertained (Vice-Chancellor Emery). In *Attorney-General* v. *Sooy Oyster Co.*, 49 *Vroom* 394, it was pointed out (at *p.* 407) that this jurisdiction of Chancery was a legal and not an equitable one, and that its exercise by the Chancellor was in fact more ancient than the Court of Chancery itself. It was further pointed out that in this country this legal jurisdiction has continued to reside in the courts of equity as an established method of direct attack upon grants improperly or improvidently made by the United States or by a state government.

The existence of this ancient and established legal remedy has a direct bearing upon the discretion we are now asked to exercise, one of the integral elements of which is that there is no other adequate legal remedy. Here, however, there is another remedy as strictly legal as is the remedy by *certiorari,* and far more adequate, since it can annul by its decree where *certiorari* can only undermine by its judgment, if, indeed, it can render any effective judgment at all. If the adequacy of the remedy in Chancery be denied upon the ground that the private relator must first obtain the consent of the attorney-general to the filing of the bill, the answer is that he must do substantially the same thing before he is allowed by this court to proceed by *certiorari,* of which this present application is a practical illustration. There is no essential difference between an application to the attorney-general for leave to file a bill in the nature of an information and an application to this court

or one of its justices for an *allocatur* in *certiorari;* either case is an application addressed to sound judicial discretion.

I am not suggesting that the existence of an adequate legal remedy in Chancery deprives the Supreme Court of the power to permit the use of its writ as a concurrent remedy; what I am suggesting, and, indeed, what we are deciding, is that in the exercise of a sound discretion such use should not be allowed, in view of the existence of a more complete legal remedy.

The sole authority for the *allocatur,* for which application is now made, is the case of *Shamberg* v. *Riparian Commissioners, 43 Vroom* 132, in which the grounds upon which the writ was allowed are not stated or the propriety of its allowance challenged. It is true that Mr. Justice Fort, in his opinion, says, incidentally, that a grant made without notice would be vacated upon *certiorari.* An examination of the printed case will show, however, that the matter *sub judice* was the consent of the riparian commissioners to the construction of a railroad over lands of the state executed in conformity to the act of 1873, section 36.

It was this consent or license that was made the subject of judicial review and not a riparian grant such as that now before us. Whether, therefore, that case be treated as one in which the question we are called upon to decide, was not under consideration or as one that should not be extended to absolute grants of riparian lands, it does not in either case control the exercise of the discretion reposed in us in dealing with the allowance of the prerogative writ of this court.

For the reasons stated the application for an *allocatur* is denied.