EDMUND D. OLIVER AND THE DELAWARE RIVER TRANS-PORTATION COMPANY, PROSECUTORS, v. THE INHAB-ITANTS OF THE CITY OF BURLINGTON AND HENRY L. BROWN.

Submitted February 19, 1907—Decided June 10, 1907.

1. The powers delegated to a municipal corporation by the legis-lature authorizing it to regulate wharves, and to charge and col-lect wharfage for their use, are public or legislative powers, and incapable of delegation or of surrender by the municipality. A municipality cannot, therefore, surrender the powers by leasing the exclusive use and control of its wharves for any period of time without express statutory authority so to do.

2. Such express statutory authority is not conferred upon the city of Burlington by an act entitled "An act relating to wharves and docks in cities of the third class," approved March 22d, 1901 (*Pamph. L.*, p. 394), for the reason that that act is local and special, and unconstitutional under article 4, section 7, paragraph 11, of the constitution of this state.

On *certiorari*.

Before Justices GARRISON, SWAYZE and TRENCHARD.

For the prosecutors, *Norman Grey.*

For the defendants, *Ernest Watts* and *Edwin Robert Walker.*

The opinion of the court was delivered by

TRENCHARD, J.   The writ of *certiorari* in this case brings up for review the lease of a wharf by the city of Burlington to the defendant Brown.

On June 5th, 1906, the common council of the city passed a resolution providing for the lease, which was executed June 29th, 1906.

The lease granted to Brown "all that certain wharf and wharf buildings thereon erected, situate at the foot or northerly end of High street, and facing upon the Delaware river, in the city of Burlington aforesaid, and known as the 'town wharf,' with the appurtenances."

The lease was for five years, from June 5th, 1906, at $500 per year.

The legality of the lease is challenged on the ground that the city was without power to make the lease.

High street is the oldest street in the town and was laid out in 1677.   It runs at right angles to the Delaware river and is the principal mercantile street.   At its end and between it and the river, and extending the full width of the street, is a public wharf, known as the "town wharf."   The trolley cars run down to the wharf.

The title of the streets in the city of Burlington was in the proprietors and passed to their grantees (*Lewis* v. *Pennsylvania Railroad Co.,* 19 *N. J. L. J.* 74), and there has been no conveyance of the fee of High street to the city.

The wharf in question has been used as a public wharf by the public and the different classes of boats on the river from the earliest times.   It is shown on a map made in 1696.   Appropriations for its repair were made by the city from time to time.

On March 4th, 1851, an "Act to incorporate the city of Burlington" was passed (*Pamph. L.* 1851, *p.* 149), the fifteenth

section of which provided that council might pass ordinances regulating wharves and docks and the rates of wharfage, and ordinances for such purposes were passed from time to time.

The powers delegated to a municipal corporation by the legislature, authorizing it to regulate wharves, and to charge and collect wharfage for their use, are public or legislative powers, and incapable of delegation or of surrender by the municipality. A municipality cannot, therefore, surrender the powers by leasing the exclusive use and control of its wharves for any period of time, without express statutory authority so to do. 30 *Am. & Eng. Encycl. L. (2d ed.)* 488, and cases there cited.

In this state the right of the public to have communication between the end of a street and a navigable stream kept open is well established. *Hoboken Land and Improvement Co.* v. *Hoboken,* 7 *Vroom* 540.

Only an act of the legislature can take away this right. *Elizabeth* v. *Central Railroad Co.,* 24 *Vroom* 491.

It is contended by the defendants that the necessary express statutory authority is to be found in an act entitled "An act relating to wharves and docks in cities of the third class," approved March 22d, 1901. *Pamph. L., p.* 394.

But this contention cannot prevail.

The act of 1901 is ineffectual for such purpose for the reason that it is local and special and unconstitutional under article 4, section 7, paragraph 11 of the constitution of this state.

The first section of the act provides that "where cities of the third class in this state own the wharves and docks located within such city limits, it shall be lawful for such cities to lease said wharves and docks to any person or corporation for a term not exceeding five years."

The act relates to cities of the third class only.

Our Court of Errors and Appeals, in the case of *Mortland* v. *Christian,* 23 *Vroom* 521, declared that population may be made the basis of classification in a statute relating to municipalities of this state and of their internal affairs, in cases

where the legislative object is one naturally incident to population. In this case there has been no reason assigned, nor is it apparent, why all cities should not have the power to lease their wharves as well as cities of the third class. Population cannot have any just reference to this distinction between these classes by which the one is separated from the others. There is no natural connection between the number of people in a city and its right to lease its wharves. The classification made by a statute is justified or not, by considering whether the statute is thereby rendered general or special, not whether it is wise or unwise. *Halsey* v. *Nowrey*, 42 *Vroom* 481; *Helfer* v. *Simon*, 24 *Id.* 550; *Anderson* v. *Trenton,* 13 *Id.* 486.

Our conclusion is that the city was without power to make the lease in question, and that, therefore, the lease, together with the resolution by which its execution was directed, must be set aside, with costs.