## J. R. MILLER ET AL v. COUNTY OF EL PASO, TEXAS, ET AL.

No. 7837. Decided April 23, 1941.
Rehearing Overruled May 21, 1941.
(150 S. W., 2d Series, 1000.)

*Fred C. Knollenberg* and *J. A. Gillett,* both of El Paso, for plaintiff in error, J. R. Miller, *Gerald C. Mann,* Attorney General, *Richard W. Fairchild* and *Glenn R. Lewis,* Assistants Attorney General, for plaintiff in error, the State of Texas.

Senate Bill No. 18 attempting to regulate the affairs of a county and to create offices therein, prescribing the duties and powers of those holding same, and the conditions set forth in said bill applying to only one county within the State, is a local and special law, forbidden by Article 3, section 56, of our

State Constitution. Fort Worth v. Bobbitt, 121 Texas 14, 36 S. W. (2d) 470; Clark v. Finley, 93 Texas 171, 54 S. W. 343; Randolph v. State, 36 S. W. (2d) 484.

*Ernest Guinn,* County Attorney of El Paso County, *Frank B. Clayton,* City Attorney of El Paso, *Thornton Hardie, Eugene Smith, Louis Scott* and *Potash & Cameron,* all of El Paso, for defendants in error.

The act in question is not unconstitutional, as any county can comply with the brackets, and because at the time of the passage of the act there was only one county that came within its requirements is immaterial. The act is a general law and the tax money spent for advertising is for a public purpose, and the organization of the board created therein is for county development. O'Brien v. Ammerman, 112 Texas 254, 247 S. W. 270; Gerard v. Smith, 52 S. W. (2d) 347.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This suit was brought by J. R. Miller and other tax payers against the Commissioners' Court of El Paso County and others to enjoin the collection of taxes under Acts 1935, 44th Legislature, First Called Session, p. 1541, ch. 370 (Vernon's Ann. Stat., Art. 2352b), on the ground that said Act is unconstitutional. Said Act is as follows:

"Sec. 1. In all counties in this State having a population of not less than 125,000 inhabitants and not more than 175,000 inhabitants, and containing a city having a population of not less than 90,000 inhabitants, as shown by the last preceding Federal Census, a direct tax of not over Five (5) Cents on the valuation of One Hundred ($100.00) Dollars may be authorized and levied by the Commissioners' Court of such county, for the purpose of advertising and promoting the growth and development of said county and its county seat; provided that before the Commissioners' Court of any such counties shall be authorized to levy any tax for such purpose, the qualified tax paying voters of the county shall by a majority vote authorize the Commissioners' Court to thereafter levy annually a tax not to exceed Five (5) Cents on the One Hundred ($100.00) Dollars assessed valuation.

"Sec. 2. The amount of money collected from such levy of taxes by the Commissioners' Court of any such county shall be paid to the Board of County Development in twelve (12)

monthly installments as collected. All moneys received by the Board of County Development from such tax shall be expended only for the purposes authorized by this Act, and such Board shall annually render an itemized account to the County Auditor of all receipts and disbursements.

"Sec. 3. There is hereby created in such counties as may vote in favor of this tax a Board of County Development, which shall devote its time and efforts to the growth, advertisement and development of any such county. The Board of County Development shall consist of five (5) members; two (2) to be appointed by the Commissioners' Court of such counties, representive of the agricultural interest of such counties, who shall reside outside the county seat of any such county; and three (3) of whom shall be appointed by the Board of Directors of the Chamber of Commerce of the county seat of such county, one of such three members to be a member, in good standing, of organized labor. Said members shall serve for a period of two (2) years from their appointment, without compensation, and until their successors are appointed and accept such appointment. Vacancies on such Board shall be filled in the same manner as the original appointments, and by the same agencies.

"All members of such Board of County Development shall be qualified tax paying voters of the county in which they are appointed to serve."

Section 56, Article III, of the State Constitution reads, in part, as follows:

"Sec. 56. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing:
   *   *    *    *

"Regulating the affairs of counties, cities, towns, wards or school districts;
   *   *   *   *

"Creating officers, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts;
   *   *    *    *

"And in all other cases where a general law can be made applicable, no local or special law shall be enacted; * *."

■ The purpose of this constitutional inhibition against the enactment of local or special laws is a wholesome one. It is intended to prevent the granting of special privileges and to secure uniformity of law throughout the State as far as possible. It is said that at an early period in many of the states the

practice of enacting special and local laws became "an efficient mean for the easy enactment of .laws for the advancement of personal rather than public interests, and encouraged the reprehensible practice of trading and 'logrolling.'" It was for the suppression of such practices that such a provision was adopted in this and many of the other states of the Union. 25 R. C. L., p. 820, sec. 68.

■ Notwithstanding the above constitutional provision, the courts recognize in the Legislature a rather broad power to make classifications for legislative purposes and to enact laws for the regulation thereof, even though such legislation may be applicable only to a particular class or, in fact, affect only the inhabitants of a particular locality; but such legislation must be intended to apply uniformly to all who may come within the classification designated in the Act, and the classification must be broad enough to include a substantial class and must be based on characteristics legitimately distinguishing such class from others with respect to the public purpose sought to be accomplished by the proposed legislation. In other words, there must be a substantial reason for the classification. It must not be a mere arbitrary device resorted to for the purpose of giving what is, in fact, a local law the appearance of a general law. City of Fort Worth v. Bobbitt, 121 Texas 14, 36 S. W. (2d) 470, 41 S. W. (2d) 228; Bexar County v. Tynan, 128 Texas 223, 97 S. W. (2d) 467; Clark v. Finley, Comptroller, 93 Texas 171, 178; 54 S. W. 343, Supreme Lodge United Benevolent Assn. v. Johnson, 98 Texas 1, 18 S. W. 18; Smith v. State, 120 Texas Crim. Rep. 431, 49 S. W. (2d) 739; Randolph v. State, 36 S. W. (2d) 484; Fritter v. West, 65 S. W. (2d) 414 (writ refused); State v. Hall, 76 S. W. (2d) 880; Wood v. Marfa. Ind. School Dist., 123 S. W. (2d) 429. As said in Leonard v. Luxora-Little River Road Maintenance District No. 1, 187 Ark. 599, 61 S. W. (2d) 70, 71:

"The rule is that a classification cannot be adopted arbitrarily upon a ground which has no foundation in difference of situation or circumstances of the municipalities placed in the different classes. There must be some reasonable relation between the situation of municipalities classified and the purposes and object to be attained. There must be something * * which in some reasonable degree accounts for the division into classes."

■ It will be noted that the Act in question by its terms is made applicable only in those counties having a population of not less than 125,000 nor more than 175,000 inhabitants, and

containing a city having a population of not less than 90,000 inhabitants, as shown by the last preceding Federal census. The evidence shows, without dispute, that the only county within the State coming within the provisions of the Act at the time of its adoption was El Paso County. The Legislature was doubtless cognizant of this fact. It was also cognizant of the fact that another Federal census would not be taken until 1940, and that as a consequence no other county would come within the terms of the Act for a period of five years after its adoption. We must presume, therefore, that it was intended by the Legislature that said Act should apply only to El Paso County during said period of time. As a matter of fact, no other county met the population requirements of the Act under the 1940 census, and as a consequence El Paso County is the only county that will be affected thereby until after 1950. ·

We are therefore met at the outset with a law which, under facts well known at the time of its adoption, was applicable only to a single county. Clearly then it is a local law and must fall as such, unless it can be fairly said that the class so segregated by the Act is a substantial class and has characteristics legitimately distinguishing it from the remainder of the State so as to require legislation peculiar thereto. In this instance the classification is made to rest entirely on the population of the county and a city therein. Resort to population brackets for the purpose of classifying subjects for legislation is permissible where the spread of population is broad enough to include or segregate a substantial class, and where the population bears some real relation to the subject of legislation and affords a fair basis for the classification. It has been legitimately employed in fixing fees of offices in certain cases (Clark v. Finley, Comptroller, 93 Texas 171, 178, 54 S. W. 343), but even then it is permissible only where the spread of population is substantial and is sufficient to include a real class with characteristics which reasonably distinguish it from others as applied to the contemplated legislation, and affords a fair basis for the classification. Bexar County v. Tynan, 128 Texas 223, 97 S. W. (2d) 467.

The peculiar limitations employed by the Legislature in this instance to segregate the class to be affected by the legislation not only bears no substantial relation to the objects sought to be accomplished by the Act, but the purported class attempted to be so segregated is, in fact, not a class distinct in any substantial manner from others in this State. There is nothing peculiar about a county having a population of less than 125,000 nor more than 175,000 inhabitants and containing a city with a

population of not less than 90,000 inhabitants that marks it a suitable and peculiar field for the expending of public funds for advertising and promoting the growth and development of the county and its county seat, as distinguished from other counties having substantially the same population or cities of similar size. The slight variation between the population of El Paso County and its principal city and other counties and cities in the State does not distinguish it in any manner that is germane to the purpose of this particular legislation. In other words, whatever difference there is in population does not appear to be material to the objects sought to be accomplished. After having carefully considered the matter, we are convinced that the attempted classification is unreasonable and bears no relation to the objects sought to be accomplished by the Act, and that as a consequence the Act is void.

The defendants in error rely strongly on the case of Watson v. Sabine Royalty Corp., 120 S. W. (2d) 938, in which this Court refused a writ of error. That case involved numerous facts and circumstances not here involved. But regardless of the holding therein, we are of the opinion that any holding other than that herein announced would be unsound and amount to a practical nullification of the constitutional provision above referred to.

■ Our holding that the Act is void on the grounds above stated, renders it unnecessary for us to pass on the other assignments raised in the briefs. In this connection, however, we deem it proper to call attention to the fact that the case of Davis v. City of Taylor, 123 Texas 39, 67 S. W. (2d) 1033, relied on by defendants in error as authorizing the expending of public funds for advertising purposes, dealt with a home-rule city and not a county, and that a city may exercise proprietary functions, while a county, as a mere subdivision of the State, can exercise only governmental functions.

The judgments of the trial court and of the Court of Civil Appeals are reversed, and the cause is remanded to the trial court with instructions to grant the injunction as prayed.

Opinion delivered April 23, 1941.