

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

**GERALD C. MANN**
ATTORNEY GENERAL

Honorable Charles F. Hemphill
County Auditor
Upton County
Rankin, Texas

Dear Sir:

Opinion No. 0-4886
Re: Is Senate Bill No. 213, Acts
of the 47th Legislature, Reg-
ular Session, pertaining to
an allowance not to exceed
$100.00 per month traveling
expenses and additional com-
pensation to the County Com-
missioners of Upton County
constitutional?

Your letter of September 23, 1942, requesting the opinion of this department on the above stated question reads as follows:

"In confirmation of my wire from San Angelo to you this date I respectfully request your Opinion on Senate Bill No. 213 which has to do with Commissioners' Car Expense or traveling allowances in Counties having $20,000,000.00 Valuation and a population of less than 3 persons per square mile of area.

"This County has a Valuation of $22,300,000.00 effective for this calendar year and the Commission-ers' Court has declared in a lawful session that the County has less than 3 persons per square mil of area and accordingly the Commissioners are drawing $25.00 each per month as car expense or traveling allowance in addition to their lawful Salaries.

"Please rush this opinion all you possibly can as I must rely on it in one of my major performances. I would appreciate your kindness in wiring me col-lect if in your opinion the above mentioned law is found to be unconstitutional."

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Senate Bill No. 213, Acts of the 47th Legislature, Regular Session, including the caption, reads as follows:

"S. B. No. 213

"An Act providing for compensation to be paid County Commissioners for their services as Ex-officio Road Commissioners; providing for reimbursement of County Commissioners for the use by such Commissioners of their personal automobiles in traveling in the discharge of their duties as Ex-officio Road Commissioners; and limiting the application of this Act to counties having an assessed valuation of not less than Twenty Million ($20.000.000.00) Dollars and a population of not more than three (3) persons per square mile; and declaring an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1. Each County Commissioner acting as Road Commissioner and faithfully discharging the duties imposed upon him as such by law or by the Commissioners' Court, may, by order of the Commissioners' Court, be allowed, as compensation for such services in addition to his salary as such County Commissioner not to exceed the sum of One Hundred ($100.00) Dollars per month, to be paid monthly out of the Road and Bridge Fund of the County.

"Sec. 2. The Commissioners' Court of such Counties may allow the Commissioners using their personal automobiles for traveling in the discharge of their duties as Road Commissioners not to exceed Four (4) Cents per mile actually and necessarily traveled by said Commissioner in his personal car in the discharge of such duties, said amount to be paid out of the Road and Bridge Fund of the Counties. An account for such expenses shall be submitted by

each Commissioner monthly, and no such account shall be approved by the Commissioners' Court unless the Commissioner presenting said account shall make oath as to the number of miles actually and necessarily traveled by him in his personal car in discharging his duties as Road Commissioner, and that the account presented by him is just, due, and unpaid.

"Sec. 3. The provisions of this Act shall apply only to Counties having an assessed valuation of not less than Twenty Million ($20,000,000.00) Dollars and a population of not more than three (3) persons per square mile.

"Sec. 4. The fact that the statutes now in force fixing the salaries and compensation of County Commissioners fix inadequate compensation for the said Commissioners of said Counties, because of extra responsibility imposed on the County Commissioners of those Counties due to the size and valuation of the Counties and the large amount of County maintained roads in said Counties creates an emergency and a public necessity requiring the suspension of the Constitutional Rule providing that bills shall be read on three several days in each House and the same is hereby suspended and this Act shall take effect from and after its passage, and it is so enacted."

After a careful search of the statutes we fail to find any statute imposing added and new duties upon the County Commissioners of Uptoh County not imposed by general law. Senate Bill No. 213, supra, does not impose added and new duties upon the County Commissioners not imposed by general law for which it undertakes to provide additional compensation. We think that the abovementioned act was enacted by the Legislature without any intention of constituting the same a local road law for the maintenance of public road and highways in Upton County. Sufficient proof that it was not intended as a special road law for Upton County, as authorized by Section 9, Article VIII of the State Constitution, is the fact that it was not specifically enacted as such. If it had been the desire, purpose and intention of the Legislature to pass a special road law for Upton County, it could have easily manifested same by passing it as such.

Section 56, Article 3, of the State Constitution reads in part as follows:

"Section 56. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing: . . . regulating the affairs of counties, cities, towns, wards or school districts. . . . and in all other cases where a general law can be made applicable, no local or special law shall be enacted; . . ."

Referring to the above provisions of Article 3 of the Constitution, it is stated in the case of Miller v. El Paso County, 150 S. W. (2d) 1000

"The purpose of this Constitutional inhibition against the enactment of local or special laws is a wholesome one. It is intended to prevent the granting of special privileges and to secure uniformity of law throughout the State as far as possible. It is said that at an early period in many of the states the practice of enacting special and local laws became 'an efficient means for the easy enactment of laws for the advancement of personal rather than public interests, and encouraged the reprehensible practice of trading and "logrolling".' It was for the suppression of such practices that such a provision was adopted in this and many of the other states of the Union.

"Notwithstanding the above constitutional provision, the courts recognize in the Legislature a rather broad power to make classifications for legislative purposes and to enact laws for the regulation thereof, even though such legislation may be applicable only to a particular class or, in fact, affect only the inhabitants of a particular locality; but such legislation must be intended to apply uniformly to all who may come within the classification designated in the Act, and the classification must be broad enough to include a substantial class and must be based on characteristics legitimately distinguishing such class from others with respect to the public purpose sought to be accomplished by the proposed legislation. In other

words, there must be a substantial reason for the
classification. It must not be a mere arbitrary
device resorted to for the purpose of giving what
is, in fact, a local law the appearance of a gen-
eral law. ... 'The rule is that a classifica-
tion cannot be adopted arbitrarily upon a ground
which has no foundation in difference of situation
or circumstances of the municipalities placed in
the different classes. There must be some reason-
able relation between the situation of municipal-
ities classified and the purposes and objects to
be attained. There must be something . . . which .
in some reasonable degree accounts for the division
into classes.'"

It will be noted that the Act in question by its
terms is made applicable only in those counties having a
population of not more than three persons per square mile
and having an assessed valuation of not less than $20,000,000.
The peculiar limitaions employed by the Legislature in this
instance to segregate the class to be affected by the Legis-
lation not only bears no substantial relation to the object
sought to be accomplished by the Act, but the purported class
attempted to be so segregated is, in fact, not a class dis-
tinct in any substantial manner from others in this State.
There is nothing peculiar about a county having a population
of not more than three persons per square mile and having an
assessed valuation of not less than $20,000,000 that marks
it a suitable and peculiar field for the expending of public
funds for the purposes mentioned in the Act, as distinguished
from other counties having substantially the same valuation
and population. The slight variation between the population
and valuation mentioned in the Act does not distinguishit
in any manner from other counties having substantially the
same population and assessed valuation that is germane to the
purpose of the particular Legislation. In other words, what-
ever difference there is in population and assessed valuation
does not appear to be material to the object sought to be ac-
complished. After having carefully considered the matter, we
are convinced that the attempted classification is unreasona-
ble and bears no relation to the object sought to be accom-
plished by the Act and that as a consequence the Act is uncon-
stitutional and therefore void.

In view of the Miller case, supra, and the case of
Jameson et al. v. Smith, 161 S.W. (2d) 520, and the authori-
ties cited in these cases, it is the opinion of this department,

as above stated, that the Act under consideration is unconstitutional and therefore void. Therefore, it is our further opinion that the County Commissioners are not entitled to any additional compensation under the abovementioned Act nor are they entitled to any traveling expenses under the same. The CountyCommissioners are only entitled to the compensation as provided by general law (Article 2350, Vernon's Annotated Civil Statutes).

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By   s

Ardell Williams
Assistant

AW:mp

APPROVED OCT 5, 1942

s  Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE

BY  BWB
CHAIRMAN