

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

May 10, 1961

Honorable George L. Preston, Chairman
Municipal & Private Corporation Committee
House of Representatives
Austin, Texas

Opinion No. WW-1054

Re: Constitutionality of House
Bill 738, 57th Leg., R.S.,
relating to the disannexa-
tion by cities of certain
territories.

Dear Mr. Preston:

In your letter of March 29, 1961, you request the opinion of this office on the constitutionality of House Bill No. 738, which reads as follows:

"AN ACT AMENDING ARTICLE 1266, REVISED CIVIL
STATUTES OF TEXAS, 1925, AUTHORIZING ANY
CITY IN THE STATE OF TEXAS OF 150,000 OR
MORE POPULATION ACCORDING TO THE PRECEDING
FEDERAL CENSUS, LOCATED IN COUNTIES HAVING
A POPULATION, ACCORDING TO THE PRECEDING
FEDERAL CENSUS, IN EXCESS OF 205,000,
WHETHER ORGANIZED BY SPECIAL LAW, HOME RULE
CHARTER OR GENERAL LAWS OF THE STATE OF
TEXAS, TO DISANNEX UNIMPROVED TERRITORY
AND TO DISANNEX ANY TERRITORY WHETHER IM-
PROVED OR UNIMPROVED LYING WITHIN 2500
FEET FROM THE THREAD OF ANY NAVIGABLE
STREAM, AND DECLARING AN EMERGENCY.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE
OF TEXAS:

"Section 1.  Whenever there exists within
the corporate limits of any city in this State
of 150,000 or more population according to the
preceding Federal census located in a county
having a population according to such census
in excess of 205,000, whether such city was
organized by special law, home rule charter,

or general laws of this State, territory to the extent of at least three acres contiguous, unimproved and adjoining the lines of any such city, and any territory of any extent, whether improved or unimproved, lying within twenty-five hundred feet from the thread of any navigable stream, the governing body of any such city may, by ordinance duly passed, discontinue said territory as a part of any such city. When said ordinance has been duly passed, the governing body shall cause to be entered an order to that effect on the minutes or records of such city; and from and after the entry of such order, said territory shall cease to be a part of such city. /Emphasis supplied./

"Section 2. All laws and parts of laws in conflict herewith are hereby repealed to the extent of such conflict.

"Section 3. The fact that there is now no adequate law in force authorizing the discontinuing or deannexing of improved as well as unimproved territory adjoining navigable streams within cities in this State, and the importance of fostering commerce and industry along the navigable streams of this State, creates an emergency and an imperative public necessity that the consitutional rule requiring bills to be read on three several days in each House be suspended and that this Act take effect and be in force from and after its passage, and it is so enacted."

Article 1266, as originally enacted in 1923, applied to cities of the population stated according to the United States Census of 1920. After the codification of 1925, the population bracket was made referable to each preceding Federal census, and the statute has remained the same since that time with the exception of an amendment in 1959, permitting the disannexation of improved territory "within the corporate limits of any city in this state of five hundred and ninety-six thousand (596,000) or more population according to the last preceding Federal census, . . . which is non-taxable to the city and which is contiguous and adjoining the lines of any such city." Acts 1959, 56th Leg., p. 563, ch. 254, Sec.1.

The title of the amendatory bill under consideration makes no reference to the fact that the bill omits the provisions of the 1959 amendment and we are of the opinion that H.B. No. 738 is contrary to Section 35 of Article III of the Constitution of Texas and is invalid to the extent that it attempts to exclude that provision. The rule is stated in Volume 39 of Texas Jurisprudence at page 103:

". . . Thus a title that expresses a purpose to change a prior law by adding or extending a provision or conferring a right does not warrant an amendment that omits or restricts a provision of the original act or destroys a previously existing right. . . .

"A title expressing a purpose to amend a statute in a certain particular is deceptive and misleading in so far as the body of the act purports to amend the prior law in other particulars. . . ." Citing the following cases: Ward Cattle & Pasture Co. v. Carpenter, 109 Tex. 103, 200 S.W. 521 (1918); Lone Star Gas Co. v. Birdwell, 74 S.W.2d 294 (Civ.App. 1934); Holman et al v. Pabst, 27 S.W.2d 340 (Civ.App. 1930, error ref.); Holman v. Cowden & Sutherland, 158 S.W. 571 (Civ. App. 1913, error ref.).

However, this defect does not render the bill unconstitutional, but will only cause the 1959 amendment to remain in effect.

Following the enacting clause, there should be added a provision to this effect: - "Section 1 of Article 1266, as amended in 1959, is to be amended so as to hereinafter read as follows: "

Another problem is presented by that provision of H.B. No. 738 which would permit the governing body of any city coming within the specified population bracket, by ordinance duly passed, to disannex "any territory of any extent, whether improved or unimproved, lying within twenty-five hundred feet from the thread of any navigable stream. . . ." The addition of this quoted provision is the only change made in Article 1266, other than the omission of the 1959 amendment mentioned above.

The constitutionality of Article 1266 as it existed prior to 1959, was upheld in City of San Antonio v. State ex rel. Criner, 270 S.W.2d 460 (Civ.App. 1954, error ref.). By quo warranto proceeding, an ordinance detaching approximately 65 square miles of territory from the city was invalidated. On appeal, the constitutionality of Article 1266 was challenged on the ground that it violated Section 56 of Article III of the Constitution of Texas, which provides in part that the Legislature cannot pass any local or special law regulating the affairs of cities. (The city's contention that the area detached was unimproved within the meaning of Article 1266 was overruled.) With regard to the constitutional objection posed, we quote at length from the per curiam opinion:

". . . In 1923 the City of Dallas was the only city which fell within the population bracket fixed by this statute. Since such time however the cities of San Antonio, Fort Worth and Houston have grown into such bracket. It is therefore an established fact that this statute has elasticity and is not one which could never apply to a city not qualified at the time of the passage of the statute.

"In Miller v. El Paso County, 136 Tex. 370, 150 S.W.2d 1000,1002, the Supreme Court said:

"'Resort to population brackets for the purpose of classifying subjects for legislation is permissible where the spread of population is broad enough to include or segregate a substantial class, and where the population bears some real relation to the subject of legislation and affords a fair basis for the classification.'

"In Bexar County v. Tynan, 128 Tex. 223, 97 S.W.2d 467, 469, (Comm.App.,Sec.A), the Court said:

"'The Legislature may, upon a proper and reasonable classification, enact a general law which at the time of its enactment is applicable to only one county; provided its application is not so inflexibly fixed as to prevent it ever being applicable to other counties.'

"We also quote from Rodriguez v. Gonzales, 148 Tex. 537, 227 S.W.2d 791, 793, where the Court stated:

"'The primary and ultimate test of whether a law is general or special is whether there is a reasonable basis for the classification made by the law, and whether the law operates equally on all within the class. Bexar County v. Tynan, 128 Tex. 223, 97 S.W.2d 467; Miller v. El Paso County, 136 Tex. 370, 150 S.W. 2d 1000; 1 Sutherland (2nd Ed.), Statutory Construction, Sec. 203. If the classification made by the law "is not based upon a reasonable and substantial difference in kind, situation or circumstance bearing a proper relation to the purpose of the statute," it is a special law.'

"It is our opinion that Art. 1266 meets the requirements of these decisions. The statute is not closed but it is one into which cities not only may but have grown. Appellants as much as concede that the statute is not invalid on the ground that it is too restrictive but base their principal argument upon the ground that the classification of the statute has no proper relation to the purpose of the statute. With this we do not agree.

"The number of problems which a city has and their complexity increase with amazing alacrity as a city grows in size. To meet these problems the Legislature enacts various laws which it deems appropriate to cities of a given size. Art. 1266 is one of these laws. It applies to the four largest cities in Texas and provides that they may not detach territory unless it exceeds three acres in size and is unimproved. On the other hand, the Legislature has provided that cities incorporated under general laws. usually less than 5,000 population, may detach if there is at least 10 acres which is uninhabited as defined in such statute.

"The record in this case reflects a very sound basis for the distinction drawn by the Legislature as reflected by Arts. 1266 and 973. The nature of the improvements on this territory, sewers, gas, water, telephone, power facilities and paved roads are but the usual and customary

improvements to be found within the limits of
all large cities such as San Antonio, Dallas,
Houston and Fort Worth.  Small towns as those
affected by Art. 973 are not so likely to be
as highly improved and hence are the subject of
different legislative treatment in this respect.

"In our opinion there is a legitimate
relationship between the size of a city and the
privilege of detaching a portion of its terri-
tory and that Art. 1266, based upon such relation-
ship, is a valid statute.  Whether it is wise or
unwise is exclusively a legislative matter.

"We have no hesitancy in saying, however,
that a city dweller who becomes accustomed to
city services and privileges such as water,
sewer, garbage, schools and fire and police
protection or who has improved his property
in reliance upon city zoning laws is entitled
to reasonable safeguards against the overnight
destruction of these advantages and that the
enforcement of Art. 1266 will have this wholesome
effect."

We are of the opinion that H.B. No. 738 is violative of
Section 56 of Article III of the Constitution of Texas because
the classification of the bill has no proper relation to the
purpose of the Statute.  While there may well be, as announced
in the City of San Antonio case, supra, "a legitimate relation-
ship between the size of a city and the privilege of detaching
a portion of its territory," we believe that the legitimacy is
attributable to the fact that the legislation there reviewed
had as its purpose the granting of permission to cities the
power to make reasonable, orderly alterations of its boundaries
by the exclusion of property not necessary for, nor benefited
by, inclusion within the corporate limits.

But the avowed purpose of H.B. No. 738 is "the importance
of fostering commerce and industry along the navigable streams
of this State, . . ." and we can perceive of no distinguishing
characteristics between cities of the population expressed in
the bill and those of lesser population, where both have
navigable streams within their limits, that would impart legiti-
macy to the classification.  The rule was pronounced in Leonard
v. Road Maintenance District No. 1, 187 Ark. 599, 61 S.W.2d 70,
71 (1933), and cited with approval in Miller v. El Paso County,
136 Tex. 370, 150 S.W.2d 1000 (1941), as follows:

> ". . . 'The rule is that a classifica-
> tion cannot be adopted arbitrarily upon a
> ground which has no foundation in difference
> of situation or circumstances of the munici-
> palities placed in the different classes. There
> must be some reasonable relation between the
> situation of municipalities classified and the
> purposes and objects to be attained. There must
> be something * * * which in some reasonable
> degree accounts for the division into classes.'"

In Oliver v. City of Burlington, 75 N.J.L. 227, 67 Atl. 43, (1907), a statute granting to cities of the third class authority to lease their wharves was held to be void because it was local or special. We quote from the court's opinion:

> ". . . In this case there has been no
> reason assigned, nor is it apparent, why all
> cities should not have the power to lease their
> wharves as well as cities of the third class.
> Population cannot have any just reference to
> this distinction between these classes by which
> the one is separated from the others. There is
> no natural connection between the number of people
> in a city and its right to lease its wharves. The
> classification made by a statute is justified or
> not, by considering whether the statute is thereby
> rendered general or special, not whether it is wise
> or unwise. . . ." Cf. Christoph v. Chilton, 205
> Wis. 418, 237 N.W. 134 (1931).

In view of the above authorities, H.B. No. 738 is unconstitutional as local and special legislation.

In our opinion, there is also a serious question as to whether H.B. No. 738 is violative of the due process section of the Constitution of Texas, to the extent that it would allow summary disannexation of improved property lying within twenty-five hundred feet from the thread of any navigable stream.

In H.B. No. 738 no standard is provided, other than that the property lie within twenty-five hundred feet of a navigable stream; nor is there opportunity for notice, hearing or remonstrance by the owners of the property affected. The proposed amendment would afford no reasonable safeguard against the overnight destruction of those advantages accruing to a city dweller who has become accustomed to city services and privileges such as water, sewer, grabage, schools and fire and police

Honorable George L. Preston, page 8 (WW-1054)


protection, or who has improved his property in reliance upon city zoning laws. We refer again to the last-quoted paragraph of City of San Antonio v. State, supra, at page 6 of this opinion.

## SUMMARY

H.B. No. 738 violates Section 35 of Article III of the Constitution of Texas in that the title of the Act fails to reflect that a provision of the amended Act is omitted; however, this defect does not render the bill unconstitutional but will only cause the 1959 amendment to remain in effect.

H.B. No. 738 is unconstitutional as it violates Section 56 of Article III of the Texas Constitution, because the classification of the Act has no proper relation to the purpose of the Act.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Dudley D. McCalla
Dudley D. McCalla
Assistant

DDM:hmc:ms

APPROVED:
OPINION COMMITTEE
W. V. Geppert, Chairman

William H. Pool, Jr.
Raymond V. Loftin, Jr.
Houghton Brownlee, Jr.

REVIEWED FOR THE ATTORNEY GENERAL
By: Morgan Nesbitt