**Garrett MORRIS, Chairman of Texas Public Utility Commission, et al., Appellants,**

v.

**CITY OF SAN ANTONIO et al., Appellees.**

No. 12792.

Court of Civil Appeals of Texas, Austin.

Oct. 25, 1978.

Rehearing Denied Nov. 8, 1978.

John L. Hill, Atty. Gen., Martha V. Terry, Asst. Atty. Gen., Austin, for appellants.

W. Roger Wilson, Matthews, Nowlin, Macfarlane & Barrett, San Antonio, for appellees, Cities of San Antonio, Floresville and Robstown.

Faires P. Wade, Wade & Cromwell, Corpus Christi, for appellee, City of Robstown.

O'QUINN, Justice.

The cities of San Antonio and Floresville brought separate suits, now consolidated, against the Chairman of the Texas Public Utility Commission and other appropriate state officials pursuant to Article 1.05, Title 122A, Taxation-General, V.A.T.S., for recovery of taxes in excess of $611,000 paid under protest to the Utility Commission. From the declaratory judgment of the district court awarding recovery of the taxes and holding portions of the Public Utility Regulatory Act invalid as in violation of the Constitution, the Chairman of the Commission and other defendants below have appealed.[1]

We will affirm judgment of the trial court awarding recovery of the taxes on grounds specified in this opinion.

As consolidated the cases were tried before the court without aid of a jury early in December of 1977, and on December 16 the court entered judgment, subsequently corrected in some detail by judgment *nunc pro tunc* entered March 24, 1978. Trial was largely upon stipulation of the parties and documentary proof.

The attorney general, in behalf of the state officials sued, brings nine points of error. The main contention made is that the district court erred in finding unconstitutional that portion of Section 3(c)(4) of the Public Utility Regulatory Act (Art. 1446c, V.A.C.S.; Acts 1975, 64th Leg., p. 2327, ch. 721, as amended 1977), which purports to place municipal utilities, if operated as of May 1, 1975, by a board of local

---

1. The City of Robstown intervened below as a municipality operating utilities under a system similar to that of San Antonio, although at the time of trial Robstown was not assessed for taxes, and is now an appellee. After original filing of the suits below, Garrett Morris, then Chairman of the Texas Public Utility Commission, was succeeded in office by George Cowden, and Jesse James, then State Treasurer, now deceased, was succeeded in office by Warren G. Harding, and by writ of *scire facias* Cowden and Harding have been made proper parties to this cause in their respective official capacities.

trustees, as in San Antonio and Floresville, under the Utilities Act and to make them subject to taxes levied by the Commission.

The relevant portions of Section 3 of the Utility Act are:

"Sec. 3(c) The term 'public utility' or 'utility,' when used in this Act, includes any person, corporation, river authority, cooperative corporation, or any combination thereof, *other than a municipal corporation,* or their lessees, trustees, and receivers, now or hereafter owning or operating for compensation in this state equipment or facilities for:

"(1) producing, generating, transmitting, distributing, selling, or furnishing electricity ('electric utilities' hereinafter);

\* \* \* \* \* \*

"(3) transmitting or distributing combustible hydrocarbon natural or synthetic natural gas for sale or resale in a manner not subject to the jurisdiction of the Federal Power Commission . . . ('gas utilities' hereinafter) . . .

"(4) the transmitting, storing, distributing, selling, or furnishing of potable water . . .. The term 'public utility' or 'utility' includes any municipally owned gas or electric utility, whether owned separately or in conjunction with other municipalities *operated by a board of trustees which as of May 1, 1975, was not directly appointed by the governing body of the municipality, and does not include any other municipally owned utility unless otherwise provided in this Act. . . ."* (All emphasis added)

Both home rule and general law cities are empowered to "build and purchase, to mortgage and encumber their" utility systems by which an obligation of the system may not become a debt of the city "but solely a charge upon the properties of the system so encumbered . . ." (Art. 1111, V.A. C.S.) By the terms of the encumbrance, the management and control of the system during the time it is encumbered may be placed in the hands of the governing body of the city, "or may be placed in the hands of a *board of trustees to be named in such encumbrance,* consisting of not more than five members, one of whom shall be the mayor" of the city. (Emphasis added) (Art. 1115, V.A.C.S.)

Both San Antonio, a home rule city, and Floresville, a general law city, placed their utilities involved in this litigation under a "board of trustees" as authorized by Articles 1111 and 1115, and on May 1, 1975, the date specified by the Legislature in Section 3(c)(4) of the Utility Act, were so operating their utility systems. Thus the municipally owned utility in each of the cities of San Antonio and Floresville was "operated by a board of trustees which as of May 1, 1975, was not directly appointed by the governing body of the municipality," (Sec. 3(c)(4), Art. 1446c) but instead, as required by Article 1115, the trustees were named according to "the terms of such encumbrance."

The basic and controlling issue is whether Section 3(c)(4), in the language made applicable to such cities and their utilities, is a local or special law in violation of Article III, section 56, of the Constitution of Texas denying the Legislature authority to "pass any local or special law . . . Regulating the affairs of counties, *cities, towns,* wards or school districts . . ." (Emphasis added)

The Legislature not only sought by the language in Section 3 to draw a distinction between (1) cities managing their own utilities through boards whose vacancies are filled by city council appointment and (2) cities managing their utilities through boards of trustees not directly appointed by the governing body, but confined the latter class to municipally owned utilities "operated by a board of trustees *which as of May 1, 1975, was not directly appointed by the governing body"* of the city. That date permanently closed the class so as to prevent any other municipality from coming within the classification at any time in the future.

■ Not only must a classification be broad enough to include a substantial class based on characteristics legitimately distinguishing that class from others, but the legislation must be intended to apply uni-

formly to all municipalities that may in the future come within the classification designated. *Miller v. El Paso County,* 136 Tex. 370, 150 S.W.2d 1000 (1941). In a case decided ten years earlier than *Miller* the Supreme Court held a statute invalid as a local or special law and said, ". . . the act is so constructed that it is absolutely impossible for any other city in the state to ever be included within the terms or under the provisions of the act." *City of Fort Worth v. Bobbitt,* 121 Tex. 14, 36 S.W.2d 470, 471 (1931).

In this case the trial court, in awarding recovery of taxes by San Antonio and Floresville stated:

"It is the declaratory judgment of the court that that portion of section 3(c)(4) of the Texas Public Utility Regulatory Act, Article 1446c, Vernon's Texas Civil Statutes (1975), which includes within the definition of the term 'public utility' or 'utility' 'any municipally-owned gas or electric utility, whether owned separately or in conjunction with other municipalities operated by a board of trustees which as of May 1, 1975, was not directly appointed by the governing body of the municipality' is unconstitutional as a special and local law under the provisions of Article III, section 56 of the Constitution of the State of Texas, and that, therefore, the Plaintiff and Intervenor Cities of San Antonio, Floresville and Robs-

town are not lawfully classified as 'public utilities' for purposes of the said Act, but are 'municipally-owned utilities' for all purposes under the Act."

The judgment of the trial court holding the classification attempted in Section 3(c)(4) unconstitutional is correct and we conclude that judgment should be affirmed.

We have carefully considered all points of error presented by the attorney general and overrule all points, either because the contentions are contrary to the decision we have reached, or by reason of the contentions having become immaterial in view of our conclusions, or as being without merit. We regard our holding that the language specified in Section 3(c)(4) is unconstitutional as controlling and sufficient to dispose of the appeal. Therefore we do not reach some of the ancillary or alternative issues.

The judgment of the trial court awarding recovery of the taxes paid under protest and holding the classification under Section 3(c)(4) violative of Article III, section 56, of the Constitution of Texas, is affirmed.