October 8, 2008

The Honorable Richard J. Miller
Bell County Attorney
Post Office Box 1127
Belton, Texas 76513

Opinion No. GA-0670

Re: Constitutionality of sections 143.088 and 143.1041, Local Government Code (RQ-0699-GA)

Dear Mr. Miller:

You inquire about the constitutionality under article III, section 56, Texas Constitution, of two sections in chapter 143 of the Local Government Code.[1] Chapter 143 establishes a civil service system for municipal police and fire departments. *See generally* TEX. LOC. GOV'T CODE ANN. §§ 143.001–.363 (Vernon 2008). The purpose of chapter 143 is to "secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants." *Id.* § 143.001(a).

The first section about which you ask is section 143.088, which prohibits a person from either accepting money or anything of value from, or giving money or anything of value to, another for retiring or resigning from a civil service position. *See id.* § 143.088(b)–(c). Section 143.088(a) excludes from the prohibition municipalities with a population of 1.5 million or more. *See id.* § 143.088(a). And you point out that there is no comparable prohibition found elsewhere that is applicable only to municipalities with a population of 1.5 million or more. *See* Request Letter, *supra* note 1, at 1.

The second section about which you inquire is section 143.1041, concerning entrance exam requirements. *See id.* at 1. Entrance exams are required for beginner positions in civil service fire and police departments. *See* TEX. LOC. GOV'T CODE ANN. § 143.025(a) (Vernon 2008). Under section 143.025, entrance exams are open to "each person who makes a proper application and meets the requirements" of chapter 143. *Id.*; *see also id.* § 143.025(k) (providing that section 143.025 does not "apply to a police department located in a municipality with a population of 1.5 million or more"). In contrast, section 143.1041 operates in municipalities with a population of 1.5 million or more and limits the applicants who may take the entrance exam to only those applicants who have been admitted to or who are enrolled in a police officer training academy. *See id.* § 143.1041(b)(2), (c); *see also id.* § 143.101 (providing that subchapter G, which includes section 143.1041, applies to only a municipality with a population of 1.5 million or more).

___

[1]*See* Letter from Honorable Richard J. Miller, Bell County Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Apr. 3, 2008) (on file with the Opinion Committee, *also available at* http://www .texasattorneygeneral.gov) [hereinafter Request Letter].

You observe that the City of Houston is the only city in Texas that satisfies the 1.5 million population requirement. *See* Request Letter, *supra* note 1, at 1; *see also* http://factfinder.census.gov/ (2000 census data showing Houston population of 1,953,631). You state that these sections, which provide requirements exclusive to the City of Houston that are different from the requirements for all other municipalities subject to chapter 143, "differ solely because of a population bracket determination."[2] Request Letter, *supra* note 1, at 1. And you argue there is no legitimate rationale for the differences. *See id.* at 3. You thus contend the two sections are local or special laws that violate article III, section 56, Texas Constitution. *See* Request Letter, *supra* note 1, at 1–3.

Article III, section 56, Texas Constitution, prohibits the Legislature, except as otherwise authorized by the constitution, from passing any local or special law regulating, among other things, the affairs of cities. *See* TEX. CONST. art. III, § 56(a)(2). Section 56 also provides that "in all other cases where a general law can be made applicable, no local or special law shall be enacted." *Id.* art. III, § 56(b). A general law is distinguished from a local or special law in that "'a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things as a class is special, and comes within the constitutional prohibition.'" *Pub. Util. Comm'n of Tex. v. Sw. Water Servs. Inc.*, 636 S.W.2d 262, 265 (Tex. Civ. App.—Austin 1982, writ ref'd n.r.e.) (quoting *Clark v. Finley*, 54 S.W. 343, 345 (Tex. 1899)). The Texas Supreme Court has stated that the purpose of article III, section 56 is to "prevent the granting of special privileges and to secure uniformity of law throughout the State as far as possible." *Miller v. El Paso County*, 150 S.W.2d 1000, 1001 (Tex. 1941).

Texas courts also recognize, notwithstanding the constitutional prohibition, that the Legislature has broad powers to make classifications for legislative purposes and to enact laws pertaining to the classifications. *See id.* But the Legislature's power to make legislative classifications is limited in that "such legislation must be intended to apply uniformly to all who may come within the classification . . . , and the classification must be broad enough to include a substantial class and must be based on characteristics legitimately distinguishing [the] class from others with respect to the public purpose sought to be accomplished by the proposed legislation." *Id.* at 1001–02. In other words, the "primary and ultimate test of whether a law is general or special is whether there is a reasonable basis for the classification made by the law, and whether the law operates equally on all within the class." *Maple Run Mun. Util. Dist. v. Monaghan*, 931 S.W.2d 941, 945 (Tex. 1996); *see also Smith v. Davis*, 426 S.W.2d 827, 830 (Tex. 1968); *Rodriguez v. Gonzales*, 227 S.W.2d 791, 793–94 (Tex. 1950); *Miller*, 150 S.W.2d at 1002; *Bexar County v. Tynan*, 97 S.W.2d 467, 470 (Tex. 1936).

---

[2]You point out that chapter 143 contains other provisions that use a population bracket of 1.5 million. *See* Request Letter, *supra* note 1, at 3; *see, e.g.*, TEX. LOC. GOV'T CODE ANN. §§ 143.010(i) (Vernon 2008) (applicability based on municipality of 1.5 million or more), .014(a), .023(g), .030(a), .033(c), .036(e), .101–.135. You inquire specifically about only sections 143.088 and 143.1041, and we limit our opinion accordingly. Moreover, we note that analysis under article III, section 56 involves consideration of the specific provision and the relationship between the legislative classification and the "public purpose sought to be accomplished by the proposed legislation." *Miller*, 150 S.W.2d at 1001–02. Thus, any determination we make with respect to sections 143.088 and 143.1041 has no implication for other statutes containing a population bracket.

With respect to classification by population, as is the case here, the Texas Supreme Court has said that "[t]he use of population brackets alone, . . . , does not necessarily render a law special in nature and contrary to the constitutional prohibition against same." *Smith v. Decker*, 312 S.W.2d 632, 635 (Tex. 1958). But, it has also long "been held that the use of population brackets alone to direct legislation toward a particular county needing a particular type of legislation will not in itself save the law from being unconstitutional as a special law if the classification bears no reasonable relationship to the objects sought to be accomplished." *Id.* at 635–36. The population classification "must be based upon a real distinction, and must not be arbitrary or a device to give what is in substance a local or special law the form of a general law." *Bexar County*, 97 S.W.2d at 470.

We received briefs in connection with your request that contend these two sections are constitutional because the population limitation of 1.5 million does not limit these provisions to only the City of Houston.[3] This argument is based on court opinions that have used a "closed class" analysis wherein a statute is held unconstitutional "when [the population bracket] can never apply to any but one city in any possible event." *Gould v. City of El Paso*, 440 S.W.2d 696, 700 (Tex. Civ. App.—El Paso 1969, writ ref'd n.r.e.). Under that analysis, if the population bracket allows another entity such as a city or county to subsequently enter the bracket, the law is upheld. *See Gould*, 440 S.W.2d at 696–700. But the closed or open nature of a population bracket is not dispositive. *See Pub. Util. Comm'n.*, 636 S.W.2d at 264 (comparing statutes with a "closed class" that have been held constitutional with "open class" statutes held to be unconstitutional, the court stated "[w]e have concluded the 'closed class' test is an over-simplified and inaccurate way to analyze whether a statute is a local or special law"); *Oakley v. Kent*, 181 S.W.2d 919, 923–24 (Tex. Civ. App.—Eastland 1944, no writ) ("Because population as a basis for classification has been sustained by the courts in respect to legislation on certain subjects, it has been assumed, erroneously, that population brackets will serve in all instances to avoid the condemnation of the Constitution. This mistaken assumption proceeds from a failure to note that population [bracket] has been sustained as a basis for classification only in those instances where it bore a reasonable relation to the objects and purposes of the law and was founded upon rational difference in the necessities or conditions of the groups subjected to different laws.") (adopting entirety of analysis from Tex. Att'y Gen. Op. No. O-5326 (1943) at 1–6). Thus, even in statutes classified by population, the Texas Supreme Court has opined, most recently in 1996, that the central question is whether the population classification bears a reasonable relationship to the object sought to be accomplished. *See Maple*

---

[3]*See* Brief from Richard W. Carter, Attorney for Combined Law Enforcement Associations of Texas, to Nancy S. Fuller, Chair, Opinion Committee, Office of Attorney General, at 3 (May 13, 2008) (stating that the "population requirement does not limit the classification strictly to one municipality[; r]ather, it is a valid identifier of the municipalities that require certain procedures to handle the distinct situations that may arise") [hereinafter CLEAT Brief]; Brief from Aaron J. Suder, Staff Attorney, Houston Police Officers' Union, to Honorable Greg Abbott, Attorney General of Texas, at 3 (May 16, 2008) (stating that provisions in question "will apply equally to any municipality that eventually reaches [the] population threshold"); Brief from Richard C. Mumey, on behalf of the Houston Professional Fire Fighters Association, to Honorable Greg Abbott, Attorney General of Texas, at 6 (May 19, 2008) (stating the population bracket "will apply to any city which may grow to such size in the future[; b]oth Dallas and San Antonio are currently within striking distance at 1.2 million and 1.3 million, respectively"); Brief from Arturo G. Michel, Houston City Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (August 4, 2008) [hereinafter Houston Brief] ("With the inexorable growth in the population of municipalities across the state, other cities will eventually be in that class.") (all briefs on file with the Opinion Committee).

*Run*, 931 S.W.2d at 945; *see also Decker*, 312 S.W.2d at 635–36; *Rodriguez*, 227 S.W.2d at 794 (condemning law as prohibited local and special law where court determined that "[n]o valid reason can be perceived for limiting the operation of the Act to border counties"); *Smith v. State*, 49 S.W.2d 739, 744 (Tex. Crim. App. 1932) (striking down law as an unconstitutional local or special law because the "classification does not rest in real and substantial distinctions rendering the class involved distinct [and] the basis of the classification—the population involved—has no direct relation to the purpose of the law").

In examining the constitutionality of sections 143.088 and 143.1041 under article III, section 56, we are mindful that a Texas court will begin by presuming the statutes are valid. *See Davis*, 426 S.W.2d at 831. The Legislature is presumed to have not acted unreasonably or arbitrarily. *See id.* A court will also presume that the Legislature "'understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds.'" *Id.* (quoting *Nat'l Guard Armory Bd. v. McCraw*, 126 S.W.2d 627, 634 (Tex. 1939)). And when considering a law challenged under article III, section 56, "[i]f there could exist a state of facts justifying the classification or restriction . . . , [a court] will assume that it existed." *Scurlock Permian Corp. v. Brazos County*, 869 S.W.2d 478, 485 (Tex. App.—Houston [1st Dist.] 1993, writ denied). The Legislature, however, may not authorize an action that the constitution prohibits. *See Tex. Mun. League Intergov'tl Risk Pool v. Tex. Workers' Comp. Comm'n.*, 74 S.W.3d 377, 381 (Tex. 2002).

We consider the most recent enactment first. Section 143.1041 was added to chapter 143 by the 80th Legislature. *See* Act of Apr. 25, 2007, 80th Leg., R.S., ch. 27, § 1, 2007 Tex. Gen. Laws 25, 25–26. We find no express statement of purpose or intent in section 143.1041. Absent express statements in legislative enactments challenged under article III, section 56, Texas courts have looked to other sources for possible justifications. *See Maple Run*, 931 S.W.2d at 945–46 (examining court record for legitimate reason for statute), *Davis*, 426 S.W.2d at 831 (taking judicial notice of number of state-supported medical schools and assuming existence of special requirements and obligations of schools identified in classification). Here, we examine the bill analysis accompanying the enrolled version of the bill enacting section 143.1041. It indicates the Legislature intended to address

> a need to speed up the pre-employment process for applicants to certain police departments and to get more officers on the street in a timely fashion. The practice of giving the civil service examination prior to admission into a police training academy is a burden on the resources of police departments because many people who take the examination fail at a later portion in the application process.

TEX. SENATE COMM. ON INTERGOVERNMENTAL RELATIONS, BILL ANALYSIS, Tex. S.B. 339, 80th Leg., R.S. (2007). Providing for a faster application process for the hiring of police departments in larger municipalities is reasonable. Under article III, section 56, however, the question is whether the 1.5 million population limitation bears a reasonable relationship to the faster application process for police officer candidates. *See Maple Run*, 931, S.W.2d 945. We note that the Chairman of the

Senate Intergovernmental Committee indicated section 143.1041 has potential application in other municipalities. *See Hearings on Tex. S.B. 339 Before the Senate Comm. on Intergovernmental Relations*, 80th Leg., R.S. (Feb. 28, 2007), *available at* http://www.senate.state.tx.us. In the committee hearing at which the bill enacting section 143.1041 was discussed, the Chairman stated he thought the idea behind section 143.1041 was good and inquired whether it should be applicable to other cities subject to chapter 143. *See id.* He noted that the provision could be made uniformly applicable to all cities subject to chapter 143 by simply removing the population provision. *See id.* The failure of the Legislature to remove the population limitation knowing the benefits of the statute to all municipalities subject to chapter 143 could lend support to the argument that the *population limitation* in section 143.1041 is "arbitrary or a device to give what is in substance a local or special law the form of a general law." *Bexar County*, 97 S.W.2d at 470.

Nevertheless, given the general presumption that a statute is valid and the specific presumption under article III, section 56 that a state of facts could exist that justifies the classification, we cannot say that the Legislature had no reasonable basis for the classification. Thus, we cannot conclude as a matter of law that section 143.1041 is unconstitutional under article III, section 56. *See* Tex. Att'y Gen. Op. Nos. JM-1130 (1989) at 4 ("[W]e cannot say that it is violative of [article III, section 56] as a matter of law[,] . . . we cannot determine factual matters in the opinion process . . . , and there is an insufficient factual basis for reaching a decision as a matter of law."), MW-421 (1982) at 2–3 ("We cannot say as a matter of law that there is no rational basis for the classification created by the [statute]."), H-1080 (1977) at 3 ("[W]e cannot conclude that a court would hold that [the provision] is a local or special law on the basis of the classification created [therein].").

We next consider section 143.088, which was adopted by the Legislature in 1985. *See* Act of May 26, 1985, 69th Leg., R.S., ch. 910, § 4, sec. 14D(8)(a), 1985 Tex. Gen. Laws 3046, 3051. We find no express statement of purpose or intent regarding section 143.088 that informs us of the Legislature's intent with the enactment of the section. The overall purpose of chapter 143 is to secure "capable personnel who are free from political influence and who have permanent employment tenure as public servants."[4] TEX. LOC. GOV'T CODE ANN. § 143.001(a) (Vernon 2008). Briefing we received suggests that by excluding larger police forces from the prohibition against selling retirements section 143.088 promotes efficiency in the operation of larger forces by providing greater ability to retain police officers, increased flexibility to avoid high litigation costs, and more ability to stagger vacancies throughout the larger force. *See* CLEAT Brief, *supra* note 3, at 4. While these proffered purposes are certainly reasonable with respect to large police forces, the question under article III, section 56 is whether the population limitation of 1.5 million bears a reasonable relationship to those, or any other, purposes. Again, bound by the presumptions of constitutionality and classification justification, we cannot determine as a matter of law that section 143.088 violates article III, section 56. *See supra* at 4–5; *see also* Tex. Att'y Gen. Op. Nos. JM-1130 (1989), MW-421 (1982), H-1080 (1977).

---

[4]The City of Houston informs us that it has a city ordinance that applies to all City employees that prohibits the behavior prohibited in section 143.088. *See* Houston Brief, *supra* note 3, at 2 n.1 (referring to Ordinance No. 85-837).

## S U M M A R Y

Though article III, section 56, Texas Constitution, prohibits the Legislature from passing any local or special law regulating the affairs of cities, the Legislature nonetheless has broad powers to make classifications for legislative purposes and to enact laws pertaining to the classification. The primary consideration under article III, section 56, is whether there is a reasonable basis for the classification made by the law related to the purpose of the law.

Sections 143.088 and 143.1041, which pertain to civil service exam requirements and limitations on civil service retirement, respectively, apply only to municipalities with a population of 1.5 million or more, currently the City of Houston. Such a population classification is not unconstitutional where there is a basis for the population bracket that is reasonably related to the object of the statute.

Given the presumption of constitutionality of statutes as well as the presumption that a state of facts exists to justify a legislative classification, we cannot conclude as a matter of law that these two provisions are local or special laws prohibited by article III, section 56.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee