**SUNBELT UTILITIES, Appellant,**

v.

**PUBLIC UTILITY COMMISSION of Texas, Appellee.**

No. B–8252.

Supreme Court of Texas.

Oct. 31, 1979.

Rehearing Denied Dec. 12, 1979.

David Claflin, Austin, Kronzer, Abraham & Watkins, W. James Kronzer, Houston, for appellant.

Mark White, Atty. Gen., Joyce Beasley, Asst. Atty. Gen., Austin, for appellee.

BARROW, Justice.

██ This is a direct appeal raising a question of first impression in Texas on the issue of contributions in aid of construction in utility rate base making.[1] The principal question presented is whether the Commission properly excluded the developer's cost of the utility system from the rate base because the rate payers had already paid for this system as a part of the purchase price of their lots. We agree that these

---

1. "Contributions in aid of construction" may be defined as donations or contributions in cash, services or property from states, municipalities or other governmental agencies, individuals, and others for construction purposes. *See State ex rel. Util. Com'n v. Heater Util., Inc.,* 288 N.C. 457, 219 S.E.2d 56 (1975).

costs were properly excluded as contributions in aid of construction. Accordingly, we affirm the judgment of the district court which upheld the Commission's order.

Sunbelt Utilities, a partnership composed of five corporations which are owned and controlled by William S. O'Donnell and his immediate family, filed an application and statement of intent to raise rates with the Public Utility Commission of Texas. The Commission excluded nearly $800,000 from Sunbelt's asserted rate base of $2,374,262 because these sums had been expensed (written off) by the development companies prior to gratuitous transfer of the utility systems to the "brother-sister" utility corporations for each subdivision. The development companies exercised their option under rules of the Internal Revenue Service to write off in the year of sale of the lots the cost of the utility system. All of these companies have common ownership. Each of the five related utility companies is a partner in Sunbelt and the profits or losses of Sunbelt are to be shared in proportion to the number of connections in each subdivision.

The statute grants a utility the right to earn a reasonable rate of return on its invested capital. Art. 1446c § 39.[2] The adjusted value of the utility's invested capital is the foundation of the rate base. Art. 1446c, § 41(a); *Southwestern Bell Tel. v. Public Utility Com'n*, 571 S.W.2d 503 (Tex. 1978). *See* Webb, *Utility Rate Base Valuation in an Inflationary Economy*, 28 Baylor L.Rev. 823 (1976); Nichols & Fields, *Rate Base Under PURA: How Firm is the Foundation?*, 28 Baylor L.Rev. 861 (1976). As a hypothetical example, assume that the adjusted value of the utility's invested capital is $1,000. This will be the rate base. Assume further the utility is granted a twelve percent rate of return. It will then earn $120 on its adjusted value of invested capital. There is no dispute here as to the valuation of the utility system or the twelve percent rate of return found by the Commission.

Sunbelt does not question the rule which is well established in other jurisdictions that contributions by a customer in aid of construction are properly excluded from the rate base. Under this rule the utility is not allowed to earn a rate of return on property acquired from or paid for by the rate payer. *See Du Page Utility Co. v. Illinois Commerce Com'n*, 47 Ill.2d 550, 267 N.E.2d 662 (1971); *State ex rel. Util. Com'n v. Heater Util., Inc.*, 288 N.C. 457, 219 S.E.2d 56 (1975); 1 Priest, Principles of Public Utility Regulation at 177 (1969). The parties have not cited us a Texas case on this point and we have found none. However, we believe this rule is correct and here hold that consumer contributions in aid of construction should be excluded from a utility's rate base.

This brings us to the pivotal question in this case: Were the developer's costs of constructing the utility system recovered from the rate payers as a part of the purchase price of their lots? Sunbelt agrees that if the developers recovered the cost of the system in the lot sales price, such recovery should be carried over to the Sunbelt partnership because of the identity of ownership between the developer companies and the utility companies.

The crucial facts are undisputed. The development company in each subdivision installed the utilities, streets, sidewalks, and curbs so as to make the property marketable. The lots were then transferred to a related building corporation. Since most of the financing for the home construction was to be from the Veterans Administration or Federal Housing Administration, the utility system for each subdivision was deeded to a utility company for that subdivision under a trust indenture as required by the FHA. The developer took advantage of a provision of the federal income tax laws and wrote off in one year the entire cost of the utility system.[3] In *Willow Terrace Devel-*

2. All statutory references are to Texas Revised Civil Statutes Annotated.

3. As a general proposition, expenditures for capital items such as water and sewer systems would not be treated as current expenses because the useful life of the systems extends beyond the period the expenditures were made. However, developers are accorded the right to charge off these expenses in one year rather than capitalize them.

opment Co. v. Commissioner of Internal Revenue, 345 F.2d 933 (5th Cir. 1965), the court overruled the Commissioner and upheld the developer-taxpayer's right to deduct the cost of the water and sewage disposal system from the sums realized from sale of the property in the subdivision. Likewise here, the entire cost of the utility system was expensed against the amount realized from sale of the lots.[4] That is, the development corporation deducted the water and sewer systems' cost from lot sales revenue to determine taxable income and paid a lesser amount of federal income tax than would have been paid had the tax write-off not been taken.

Since the development companies were in a forty-eight percent tax bracket, Sunbelt urges that it received only this percentage of the development costs and should be entitled to include the remainder in its rate base. On the other hand, the Commission concluded that since the entire cost of the utility system was expensed by the development companies against the amount realized from sale of the lots, the rate payers had already paid for the utility system and these costs should be excluded from the rate base.

While this problem is one of first impression in this state, it has been considered by courts and regulatory bodies in other states. The uniform rule followed in these cases is that when a developer has recovered all or a part of the cost of the utility system through the sale of lots, the regulatory body has excluded that amount from the utility's rate base. The recovery of this cost by the developer in its sale of lots is treated as a contribution in aid of construction. See Florida Cities Water Co. v. Board of Cty. Com'rs, 334 So.2d 622 (Fla.App.2d 1976); Westwood Lake v. Metropolitan Dade Co. W. & S. Bd., 203 So.2d 363 (Fla. App.3d 1967); Du Page Utility Co. v. Illinois Commerce Com'n, supra; Killarney

Water Co. v. Illinois Commerce Com'n, 37 Ill.2d 345, 226 N.E.2d 858 (1967); State ex rel. Util. Com'n v. Heater Util., Inc., supra; Princess Anne Util. C. v. Commonwealth ex rel. S.C.C., 211 Va. 620, 179 S.E.2d 714 (1971); In Re Green-Fields Water Co., 53 PUR3d 670 (N.J.Bd. of Public Utility Commissioners 1964).

Sunbelt urges that these cases are distinguishable because there was no substantial evidence to support an agreement that a part of the purchase price of the lots included the costs of the utility system. Mr. O'Donnell specifically denied that the utility costs were included in the sales price of the lots and, in fact, said they were not considered in determining the price of the lots. He pointed out that a few of the lots in one of the subdivisions were in a metropolitan water district and that these lots were sold for essentially the same price. Nevertheless, he conceded that the availability of the utility systems made the lots marketable as home sites. Necessarily, this increased the value of the lots. It would be folly for any developer to say that he did not take into consideration the cost of making the subdivision marketable when he determined the price necessary to make a profit. Furthermore, it is undisputed that the entire cost of the utility system was expensed by the developer against the sum realized from the sale of the lots. Having been fully written off, the developer had a zero rate base insofar as these costs are concerned when the system was transferred without cost to the utility company.

An argument similar to that urged by Sunbelt was rejected in Princess Anne Util. C. v. Commonwealth ex rel. S.C.C., supra. In doing so, the court said:

"It is true that there was no actual testimony before the Commission relating to what it seems made up the prices of the homes purchased by those who became customers of the utility company.

4. Some of the lots were not so treated and this part of the expense was included without objection in the rate base. However, the parties have briefed the question as if all costs were recovered by the developer.

But it would be wholly unrealistic to say that the costs of the sewerage facilities contributed by the land development companies were not passed on to those customers. As the Commission pointed out in its opinion, it is common practice in real estate development to finance construction of sewerage facilities by the contribution method employed in this case, with the cost of such construction reflected in the prices paid by the purchasers of homes in the finished development. That the same result occurred in this case there can be no doubt. Neither the Commission nor this court needs testimony to tell it what is a matter of common knowledge.

"Thus, to allow the utility company a return on contributions in aid of construction would have the effect of requiring the customers to pay twice for the same property. This would be unjust. Such contributions were, therefore, properly excluded by the Commission in determining rate base."

Also, in *Florida Cities Water Co. v. Board of Cty. Com'rs, supra*, it was said that "a reasonable inference may be drawn that the source of these monies (to build the facilities) came from the sale of the lots." *See also Du Page Utility Co. v. Illinois Commerce Com'n, supra.*

We conclude that the finding of the Commission, that the purchasers of the lots in the subdivisions had paid the developer's cost of the utility system as a part of the purchase price of their lots, is reasonably supported by substantial evidence. *See Southwestern Bell Tel. v. Public Utility Com'n, supra.* Sunbelt is therefore not entitled to a rate of return on this contributed property and this cost was properly excluded from its rate base. This exclusion did not amount to an illegal confiscation of Sunbelt's property in violation of the 5th Amendment to the United States Constitution or of Art. 1, § 17 of the Texas Constitution.

Sunbelt argues that if we should conclude that these expensed costs of the utility system are found to be contributions in aid of construction, it should, in any event, be entitled to depreciation on this contributed property. We have not found any Texas authority on this question and the authorities in other states are divided. In *Princess Anne Util. C. v. Commonwealth ex rel. S.C.C., supra*, depreciation was not allowed by the Commission on contributed property for the reason that where there was no investment, there was nothing to be recovered through depreciation. The court held that the Commission had not abused its discretion in denying depreciation. On the other hand, the court in *Du Page Utility Co. v. Illinois Commerce Com'n, supra*, held that the Commission had not abused its discretion in allowing depreciation on the contributed property for the reason that Du Page would be required to replace the system from time to time.

The Examiner's Report which was adopted by the Commission held, without discussion of the question, that depreciation expense should not be allowed on the costs excluded from the rate base. We agree that this holding is reasonably supported by substantial evidence.

The judgment of the trial court is affirmed.