**PUBLIC UTILITY COMMISSION OF TEXAS, Appellant,**

v.

**SOUTHWEST WATER SERVICES, INC., Appellee.**

No. 13594.

Court of Appeals of Texas, Austin.

July 7, 1982.

Rehearing Denied July 28, 1982.

Mark White, Atty. Gen., J. Scott Wilson, Asst. Atty. Gen., Austin, for appellant.

Celia W. Kilgore, Small, Craig & Werkenthin, Austin, for appellee.

SHANNON, Justice.

Appellee Southwest Water Services, Inc., filed an administrative appeal from the order of the Public Utility Commission in Docket No. 3684 in the district court of Travis County. The Commission's order set rates for water service supplied by appellee to customers in four counties. After hearing, the district court rendered judgment setting aside the Commission's order. This Court will affirm the judgment of the district court.

In its administrative appeal to the district court, one of the water company's principal complaints was that in determining the company's rate base, the Commission ignored the command of Tex.Rev.Civ.Stat. Ann. art. 1446c, § 87A. The Commission's view, predicated upon Tex.Att'y Gen.Op. No. W–183 (1980), was that § 87A was un-

constitutional and, as a result, it was free to disregard that section. The district court, however, concluded that § 87A was constitutional and remanded the cause to the Commission for further proceedings.

Section 87A was added to the Public Utility Regulatory Act (art. 1446c) by the legislature in 1979. 1979 Tex.Gen.Laws, ch. 669, at 1553. The section provides:

(a) The provisions of this section apply notwithstanding any other provision of this Act.

(b) Water and sewer utility property in service which was acquired from an affiliate or developer prior to September 1, 1976, included by the utility in its rate base shall be included in all ratemaking formulae and at the installed cost of the property rather than the price set between the entities. Unless the funds for this property are provided by explicit customer agreements, the property shall be considered invested capital and shall not be considered contributions in aid of construction or customer-contributed capital.

(c) Depreciation expense included in cost of service shall include depreciation on all currently used, depreciable utility property owned by the utility.[1]

---

1. The import of § 87A may not be readily apparent to those unfamiliar with the law of regulated industries. An explanation of the meaning of the statute requires mention of certain practices of the water and sewer utility industry.

Water and sewer utilities serving suburban or rural areas normally acquire their facilities, particularly the water and sewer pipe mains and their connections to individual houses or businesses, from the developer of a subdivision. The developer will normally incur the original cost of installing the pipe and setting up the system. More often than not, the developer will recoup the cost of installation of the system when he sells houses in the subdivision. For federal income tax purposes, the developer is also allowed to deduct the cost of the system from the income he receives from the sale of lots or houses. The developer will then sell or donate the in-place water and sewer system to a newly created utility company. Often, this utility company will be one of several affiliate companies owned by the developer or the development company.

Later, when the utility company is operating and seeks to increase the rates it charges its

customers, the company will seek to include this property in its rate base as invested capital. Of course, inclusion of this property in the rate base will expand the rate base and increase the amount of return on the invested capital the utility is entitled to receive in the form of increased rates. Customers of the utility often complain that they are charged twice for the same property—once when they buy the house or lot (and the developer has computed the cost of the system into the purchase price) and second when the utility is allowed an increased return on invested capital because the property is included in the rate base.

Section 87A addresses this issue by permitting utilities which acquired property consisting of in-place water and sewer lines from developers or affiliate companies before September 1, 1976 to include the property in its rate base. Property acquired *after* that date may be completely excluded from the rate base or included in the rate base in the amount the utility actually paid for the system. The Commission is allowed to determine the extent to which the property acquired after September 1, 1976, will be included, if at all, in the rate base.

(footnote added). In 1980, the Commission requested from the attorney general an opinion as to whether this section of the Act violated the state constitutional prohibition against local and special laws. Tex.Const. art. III, § 56. The attorney general in his opinion determined the statute was unconstitutional as a local and special law because the September 1, 1976 date in subsection (b) of § 87A created a "closed class" in that no water and sewer utility acquiring property from an affiliate or developer after that date could include the property in the utility's rate base. In the opinion, the attorney general relied, at least in part, upon the opinion of this Court in *Morris v. City of San Antonio*, 572 S.W.2d 831 (Tex. Civ.App.1978, no writ). On authority of the attorney general's opinion, the Commission refused to comply with the provisions of § 87A in determining the rate base of water and sewer utilities in this and other cases.

■ On appeal, the Commission adopts the argument outlined in the attorney general's opinion that § 87A creates a "closed class" and therefore is unconstitutional. We have concluded the "closed class" test is an over-simplified and inaccurate way to analyze whether a statute is a local or special law.[2]

A prohibition against local and special laws is contained in many state constitutions and was incorporated in the Constitution of the Republic of Texas. That provision stated "no appropriations shall be made for private or local purposes, unless two thirds of each House concur in such appropriations." Tex.Const. art. I, § 25 (1836). Later constitutions forbade local or special laws relating to the sale of real estate, alteration of any road or street, adoption of children, emancipation of minors, or divorces. *See, e.g.,* Tex.Const. art. III, § 25

& art. XII, § 13 (1869). The present constitutional prohibition against local and special laws was adopted as art. III, § 56 in the Constitution of 1876. This section prohibits the legislature from enacting local or special laws concerning twenty-nine specific subjects and "*in all other cases* where a general law can be made applicable" (emphasis added).

The framers of the Constitution of 1876 viewed this provision as a means to prevent the legislature from enacting laws granting special privileges to particular persons, groups, or locales in the state, to encourage uniform law in the state, and to discourage horsetrading or "logrolling" legislation between members of the legislature. *Miller v. El Paso County*, 136 Tex. 370, 150 S.W.2d 1000 (1941); Tex.Const. art. III, § 56, comment (1955).

Although the provision undoubtedly discouraged special interest legislation, it also hampered the legislature's ability to address the genuine needs of particular areas or governmental subdivisions of the state. As a result, the legislature has employed relatively artificial distinctions in drafting statutes addressing local problems to avoid the constitutional prohibition. *Id.*

The literal language of art. III, § 56 would require the invalidation of any statute applying to a particular locality or group because, in most cases, "a general law can be made applicable." However, the Supreme Court, in determining whether a specific law was local or special, has looked to the policy underlying the constitutional prohibition rather than to its literal language. Accordingly, in *Clark v. Finley*, 93 Tex. 171, 54 S.W. 343, 345–6 (1899), the Court refused to invalidate a statute reducing sheriffs' and constables' fees in counties in which more than three thousand persons had voted in the last presidential election.

---

2. A "local" law and a "special" law are two distinct types of statutes. A local law has been defined as one applying to a particular geographical point or area. *Clark v. Finley*, 93 Tex. 171, 54 S.W. 343, 346 (1899). A special law is a law relating to a particular person or group. *Id.* 54 S.W. at 345. Later Texas Supreme Court cases have stated the terms are

synonymous. *E.g., Austin National Bank v. Sheppard*, 123 Tex. 272, 71 S.W.2d 242, 245 (1934). While of no particular significance, the law challenged in this appeal would be a special law, since it applies to a particular group—those utilities acquiring property before September 1, 1976.

■ In *Clark*, the Court adopted the distinction between a general law and a special law drawn by the Pennsylvania Supreme Court in *Wheeler v. Philadelphia*, 77 Pa. 338 (1875), that "a statute which relates to persons or things *as a class* is a general law, while a statute which relates to *particular* persons or things as a class is special, and comes within the constitutional prohibition." *Clark*, 54 S.W. at 345 (emphasis added). This definition, of course, did not answer the question as to which particular classes were constitutionally suspect. The Court answered this question by stating the general rule that the class created by the statute must be a real class, and not a "pretended" class created by the legislature to evade the constitutional restriction. *Id.* A "pretended" class would be one which "manifest[s] a purpose to evade the constitution." *Id.* 54 S.W. at 346. Ultimately, the class created in a statute must bear a reasonable relation to the general purpose of the legislation and concern a matter of general statewide effect or interest.[3]

The Supreme Court, in *Clark*, illustrated what it would consider an unacceptable local or special law by referring to a Pennsylvania statute which applied to all counties with a population greater than 60,000 having an incorporated city of greater than 8000 population which is located more than 27 miles from the county seat. While the statute did not identify the particular county by name, it was a special or local law

because only one county in the state qualified under the unnecessarily obtuse requirements of the statute. The statute obviously manifested a purposeful evasion of the state's constitutional prohibition against local and special laws.[4]

In subsequent cases, the Supreme Court of Texas has made an *ad hoc* determination whether a particular statutory classification was an attempt to avoid art. III, § 56 of the Constitution. In this analysis, whether the statutory criteria establishing a class closes the class to future members is irrelevant. The Court has frequently sustained statutes which created classes with a fixed number of members. Shortly after the opinion in *Clark*, the Court sustained a statute prohibiting sale of leased school lands located in a specific area of the state. *Reed v. Rogan*, 94 Tex. 177, 59 S.W. 255, 257–8 (1900). In that case the Court commented that the specified area was related to the general purpose of the act—regulation of the purchase and sale of school lands—since most leased school lands were located in the designated region, and the subject of the act was a matter of statewide interest or effect.

Similarly, in *Stephensen v. Wood*, 119 Tex. 564, 34 S.W.2d 246 (Tex. Comm'n App. 1931, opinion adopted), the Court determined a law prohibiting certain fishing methods in specified coastal counties was not an unconstitutional special or local law.

---

**3.** Challenges to statutes based on the constitutional prohibition against state and local laws are similar to challenges based on the equal rights provision of the Texas Constitution, Tex. Const. art. I, § 3, and the equal protection provision of the United States Constitution. U.S.Const. amend. XIV. The special and local law prohibition and the equal protection principle embodied in the state and federal constitutions both attempt to make law fair for all citizens. Each seeks to prevent government from acting unjustifiably to favor or mistreat persons and groups.

A violation of equal protection occurs when there is no rational basis for a classification in a statute. *E.g., Texas Woman's University v. Chayklintaste*, 530 S.W.2d 927, 928 (Tex.1975). This test is very similar to the test for local and special laws set out in *Clark v. Finley, supra*, and subsequent Supreme Court cases discuss-

ing local and special laws—that the class created in a statute must bear a reasonable relation to the general purpose of the legislation.

**4.** *Rodriguez v. Gonzales*, 148 Tex. 537, 227 S.W.2d 791 (Tex.1950) presents an example of a statute which has such unnecessarily restrictive requirements as to present a rather obvious instance of a local and special law. The statute held invalid in *Rodriguez* permitted county commissioners to authorize lawsuits and employ attorneys to collect delinquent taxes. By its specific terms, the statute applied only to counties: (1) bordering on Mexico, (2) having one or more tracts of land of 1000 or more acres owned by 10 or more persons in undivided interests, and (3) the landowners' title emanates from the King of Spain. As one might guess, the statute applied to only one county in the state.

Although the law applied to a "closed" class of counties, this class reasonably related to the general object of the legislation, and involved a matter of statewide interest—the management of coastal marine life.

In 1959, the Court upheld a statute authorizing counties to issue park development bonds if those counties were located on the Gulf of Mexico and contained an island suitable for park purposes. This statute plainly established a "closed class" but was reasonably related to the general object of the act—the development of public beaches—which benefitted all the people of the state. *County of Cameron v. Wilson*, 160 Tex. 25, 326 S.W.2d 162 (1959).

Conversely, laws creating *open-ended* classes which manifest an intent to affect a particular class or county have been declared unconstitutional. In *Bexar County v. Tynan*, 128 Tex. 223, 97 S.W.2d 467 (Tex. Comm'n App. 1936, opinion adopted), the Court invalidated a statute which inexplicably varied a prior statutory scheme. The prior scheme authorized county officials to be compensated from fees they collected according to the following schedule: officials in counties over 150,000 population could retain up to $12,000 per year, officials in counties of 75,000 to 150,000 population could retain up to $8000 per year, and officials in counties of 37,500 to 75,000 population could retain up to $5500 per year. The statute which was the basis of the lawsuit authorized reduced compensation for officials in counties populated by 290,000 to 310,000 persons according to the preceding federal census. The preceding federal census at the time of the act showed that Bexar County was the only county coming within the population standards. Although other counties could have come within the 290,000 to 310,000 population bracket in the future, the Court struck down the law because it manifested an intent by the legisla-

ture to single out Bexar County. Although the class was open to future members, it bore no reasonable relation to the general purpose of the act, the compensation of county officials, or the pre-existing statutory scheme regulating that matter.

Legislation involving a similar restrictive population bracket was held unconstitutional in *Miller v. El Paso County*, 136 Tex. 370, 150 S.W.2d 1000 (1941). The legislature enacted a statute permitting county commissioners to authorize a tax to be used for promoting "growth and development" in the county. The act's provisions applied only to counties with a population of not less than 125,000 persons or greater than 175,000 persons which contained a city of not less than 90,000 persons. All population figures were to be determined by the preceding federal census. The only county qualifying under the act when it was enacted was El Paso County. The Court recognized the statute could apply to other counties meeting the population criteria according to future federal censuses, but concluded that the law violated art. III, § 56. Although the encouragement of growth and development in urban counties of the state was a commendable objective, the legislature subverted this goal by creating an unnecessarily restrictive classification. *Id.* 150 S.W.2d at 1002–3.

■ These cases preclude, we think, the formulation of a rule declaring a statutory class which by its terms is closed to future members to be a *per se* violation of the constitutional prohibition against local and special laws. The relevant inquiry in our view is whether a particular statutory classification manifests a legislative intent to pass a special or local law under the guise of a general law. A classification will be suspect if it is so unduly restrictive as to bear no reasonable relationship to the declared general purpose of the statute.[5]

---

5. For other Supreme Court cases sustaining statutes against challenges that they are local or special laws, see *Robinson v. Hill*, 507 S.W.2d 521 (Tex.1974) (law required bail bondsmen in counties greater than or equal to 150,000 population to be licensed); *Board of Managers v. Pension Board*, 449 S.W.2d 33 (Tex.1969) (statute authorized municipal pension systems in cities of greater than 900,000 population); *Smith v. Davis*, 426 S.W.2d 827, 830–2 (Tex.1968) (hospital districts in counties greater than or equal to 650,000 persons and having teaching hospital facilities affiliated with state medical schools may assess property

Three cases illustrate the usefulness of this test. In *City of Fort Worth v. Bobbitt*, 121 Tex. 14, 36 S.W.2d 470 (Tex.Comm'n App.1931, opinion adopted), the act in question purported to give municipalities authority to issue improvement bonds. However, the act only applied to cities in the state having not less than 106,000 persons and not more than 110,000 persons according to the 1920 census. The only city in the state eligible under the act was Fort Worth. The Court declared the statutory criteria to be based on isolation, not classification, and the overly narrow population requirement bore no relationship to the authority of cities to issue improvement bonds.

Likewise, a classification in a statute permitting all counties over 125,000 population to employ special traffic officers, excepting counties with 195,000 to 205,000 population was not reasonably related to its stated purpose. *Anderson v. Wood*, 137 Tex. 201, 152 S.W.2d 1084, 1086–7 (Tex.1941). A similar fate befell a statute requiring licensing of bail bondsmen in cities with 350,000 or more persons and in counties containing cities with 73,000 to 100,000 persons. The second class had no special significance to the general purpose of the statute. *Smith v. Decker*, 158 Tex. 416, 312 S.W.2d 632, 635–6 (1958).

■ In the case at bar, it is obvious from the preceding discussion that this Court is not persuaded by the "closed class" analysis in Tex.Att'y Gen.Op. No. W–183 (1980) relied upon by the Commission. We now examine § 87A to determine whether it evidences an intent to create a local or special law by establishing a class unrelated to the object of the statute. We are mindful in this inquiry of the general mandate that we should sustain the constitutionality of a statute if possible. *Key Western Life Insurance Co. v. State Board of Insurance*, 163 Tex. 11, 350 S.W.2d 839, 849 (1961).

Section 87A requires the Commission to include in the rate base of a water and sewer utility property which it acquires from a developer or affiliate company. Inclusion of this property will expand the utility's rate base, entitling it to a larger return on its invested capital through charging higher rates to the utility's customers. The statute goes further to require the Commission to include property in the rate base only if it was acquired by the utility prior to September 1, 1976. The issue we must determine is whether this limitation is reasonably related to the stated general purpose of the statute.

The Commission admits it usually either (1) excludes such property from a water utility's rate base or (2) computes its value according to the consideration the utility actually paid the developer or affiliate. This agency practice was expressly upheld by the Supreme Court in *Sunbelt Utilities v. Public Utility Commission*, 589 S.W.2d 392 (Tex.1979). Utilities regulated by the Commission therefore have either actual or constructive notice that such property will be excluded from the utility's rate base when the Commission considers a rate increase request.

■ The Commission jurisdiction over utilities in general, and water and sewer utilities in particular, did not commence until September 1, 1976. Tex.Rev.Civ.Stat. Ann. art. 1446c, § 87(b) (1980). Obviously, a water or sewer company acquiring property from a developer or affiliate prior to this date could not know the property would be excluded from the rate base. Permitting utilities which acquired property prior to September 1, 1976 to include that property in the rate base is reasonably related to the general purpose of the act. While, as a policy matter, the legislature might have acted more reasonably in directing the Commission to include or exclude all such property from the rate base regardless of when the utility acquired it, the Septem-

---

at a higher rate than other governmental units for tax purposes); *Lower Colorado River Authority v. McCraw*, 125 Tex. 268, 83 S.W.2d 629, 636 (1935) (river authority may issue tax exempt bonds); *City of Houston v. Allred*, 123 Tex. 334, 71 S.W.2d 251, 257 (Tex.Comm'n App.1934, opinion adopted) (cities of population greater than 160,000 may issue water bonds).

ber 1, 1976 date in § 87A is, in our view, sufficiently reasonable in relation to the purpose of the act. As such, § 87A is not a local or special law violating art. III, § 56 of the Texas Constitution.

■ The district court only passed on the constitutionality of § 87A. By three cross-points, the water company complains that the district court erred in failing to pass on other claimed errors of the Commission. It is not the order of the Commission, but instead it is the judgment of the district court which this Court reviews for error. No point can be reviewed by this Court that was not passed on by the district court for there can be no error without an adjudication below. We do not consider the cross-points.

The judgment is affirmed.

Affirmed.