*338 Michael Massengale, Justice
In defense of the plan of American government that emerged from the 1787 Constitutional Convention, The Federalist No. 57 defended the proposed house of representatives against the charge that "an ambitious sacrifice of the many" would result in the "aggrandizement of the few" by predicting that future legislators naturally could "make no law which will not have its full operation on themselves and their friends, as well as on the great mass of society."[1] Though nothing in the proposed federal constitution expressly enforced this principle, the Founders nevertheless justified their faith in it and in the success of republican government upon "the genius of the whole system; the nature of just and constitutional laws; and, above all, the vigilant and manly spirit which actuates the people of America-a spirit which nourishes freedom, and in return is nourished by it."[2]
Not satisfied to rely entirely upon the spirit of freedom, most states, including Texas, have adopted state constitutional provisions that enact a default preference for legislation by general law, accomplished by a general prohibition of legislation by local or special law. In this appeal, we must determine whether an admittedly local law violated the Texas Constitution.
Liberty Utilities (Tall Timbers Sewer) Corporation provides retail sewer utility service in Smith County under a certificate of convenience and public necessity. The City of Tyler desired to provide sewer service in Liberty's service areas within city limits. The City obtained certification to provide sewer service in some, but not all, of Liberty's service areas. Having been unable to get its desired result from the Public Utility Commission, the City took its case to the Legislature, which passed Section 13.2475 of the Texas Water Code to create an exception from the generally applicable law allowing the City to provide sewer service within its boundaries, even in Liberty's service areas.
Liberty then sued the City, successfully obtaining a declaratory judgment that Section 13.2475 is unconstitutional. The City appeals the ruling that the statute violates Article III, Section 56 of the Texas Constitution. As part of its argument, the City contends that Section 13.2475 is authorized by Article I, Sections 17(d) and 26 as exceptions to the constitutional prohibition of local laws.
We conclude that the statute in controversy violates the general constitutional prohibition against local laws that regulate the affairs of a city. We furthermore conclude that the constitutional provisions that generally authorize legislative control over privileges and franchises and that generally prohibit perpetuities and monopolies did not authorize this local law. Accordingly, we affirm the judgment of the trial court.
Background
Liberty Utilities (Tall Timbers Sewer) Corporation is a retail public utility that provides retail sewer utility service to more than 2,000 customers under a certificate of convenience and public necessity (CCN) issued by the Public Utility Commission under *339 Chapter 13 of the Water Code. All of Liberty's certificated territory lies within Smith County, and some of it also lies within the city limits of the City of Tyler.
The Water Code permits a municipality to provide sewer utility service within its city limits without first obtaining a CCN, unless the areas to be served are covered already by the CCN of a retail public utility.[3] The City of Tyler annexed areas that were being served by Liberty, and it wanted to offer its sewer utility service to the residents of those annexed areas. Under the Water Code at that time, the City could serve the annexed areas by agreement with Liberty[4] or by obtaining a CCN for the annexed areas.[5] After the City and Liberty were unable to reach an agreement regarding the provision of sewer service in the areas certificated to Liberty, the City applied for a CCN to provide sewer utility services in those areas. The City was granted single certification for about 30% of the areas at issue, and it obtained dual certification with Liberty for another 10% of the areas at issue. Liberty objected to the City's certification for the remaining 60% of the areas, and the City's application for a CCN for those areas was denied. Because the Water Code required a municipal utility to obtain a CCN before providing sewer utility service in an area certificated to a retail public utility,[6] the denial of a CCN prohibited the City from offering sewer service to some of its residents.
Thereafter, the 84th Legislature considered Senate Bill 789. Bill sponsor Senator Kevin Eltife explained the proposal to the Senate Committee on Agriculture, Water & Rural Affairs as follows:
The area served by [Liberty] is a high-growth area that should enjoy substantial development with the IOUs [i.e., investor owned utilities] and pending development in this area due to the poor service and high rates. This, members, is a local bill affecting just this IOU.... It deals just with this local issue that we have been fighting basically since I was mayor of the City of Tyler in 2000. This legislation will allow a municipality that owns and operates a sewer utility to provide consistent sewer service and rates to all residents.
....
Once again, members, I would appreciate your help on this. It is a local issue. We've got a bad actor we've been dealing with for 12 years, and we're trying to resolve the situation so our constituents can have an opportunity to choose another utility provider.[7]
A member of the committee, Senator Lois Kolkhorst, asked: "if this is good practice, shouldn't we maybe apply that across the state, or is it just particular to this issue?"[8] Senator Eltife then explained some of the history of the dispute and concluded: "I would not want it for the whole *340 state. I would not vote for that. I would vote for this."[9]
The bill was passed into law as Section 13.2475 of the Water Code. The statute carved out an exception to the otherwise generally applicable law by authorizing a covered municipality to provide sewer service to an area entirely within its boundaries "without first having to obtain from the utility commission a certificate of public convenience and necessity that includes the area to be served, regardless of whether the area to be served is certificated to another retail public utility."[10] However, the application of Section 13.2475 was limited in application to a municipality:
(1) with a population of more than 95,000;
(2) located in a county that:
(A) borders Lake Palestine; and
(B) has a population of more than 200,000;
(3) that owns and operates a utility that provides sewer service; and
(4) that has an area within the boundaries of the municipality that is certificated to another retail public utility that provides sewer service.[11]
It is undisputed that as enacted, Section 13.2475 only applied to one municipality, the City of Tyler. Four counties border Lake Palestine: Anderson County, Cherokee County, Henderson County, and Smith County. Of these counties, at the time the statute was passed only Smith County had a population exceeding 200,000. The other three counties each had a population less than 80,000. Within Smith County, the City of Tyler was the only municipality that had a population exceeding 95,000. All the other municipalities had populations less than 10,000.
Liberty filed a declaratory judgment action against the City. It sought a declaration that Section 13.2475 violates Article III, Section 56 of the Texas Constitution, which prohibits the making of a local or special law under a variety of circumstances, including when a general law can be made applicable. After a bench trial, the trial court ruled that the statute violates the prohibition against local or special laws, and it ruled that the City may not provide sewer utility service to any customers within Liberty's "certificated service area pursuant to any provision of Section 13.2475 of the Texas Water Code."
The City filed a motion for new trial, arguing that the challenged statute did not violate Article III, Section 56, and that, in any event, the Legislature was otherwise authorized to enact the challenged statute under Article I, Sections 17(d) and 26. The motion for new trial was denied by operation of law, and the City appealed.
Analysis
The City concedes that Water Code Section 13.2475 is a local law,[12] but it argues that the statute nevertheless is not prohibited by Article III, Section 56 of the Texas Constitution. The City's primary argument is that Section 13.2475 is not prohibited under Article III, Section 56(a) because *341 the statute's subject matter is not included among the specific topics for which local or special laws are prohibited. The City further argues that even if the statute is a local law for purposes of Article III, Section 56, it is not unconstitutional because it is otherwise authorized by Article I, Section 17(d), which authorizes the Legislature to control privileges and franchises, and Section 26, which prohibits monopolies. These issues require us to construe the Texas Constitution and the disputed statute, which we review de novo.[13]
The full text of Article III, Section 56 reads as follows:
LOCAL AND SPECIAL LAWS.
(a) The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing:
(1) the creation, extension or impairing of liens;
(2) regulating the affairs of counties, cities, towns, wards or school districts;
(3) changing the names of persons or places;
(4) changing the venue in civil or criminal cases;
(5) authorizing the laying out, opening, altering or maintaining of roads, highways, streets or alleys;
(6) relating to ferries or bridges, or incorporating ferry or bridge companies, except for the erection of bridges crossing streams which form boundaries between this and any other State;
(7) vacating roads, town plats, streets or alleys;
(8) relating to cemeteries, grave-yards or public grounds not of the State;
(9) authorizing the adoption or legitimation of children;
(10) locating or changing county seats;
(11) incorporating cities, towns or villages, or changing their charters;
(12) for the opening and conducting of elections, or fixing or changing the places of voting;
(13) granting divorces;
(14) creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts;
(15) changing the law of descent or succession;
(16) regulating the practice or jurisdiction of, or changing the rules of evidence in any judicial proceeding or inquiry before courts, justices of the peace, sheriffs, commissioners, arbitrators or other tribunals, or providing or changing methods for the collection of debts, or the enforcing of judgments, or prescribing the effect of judicial sales of real estate;
(17) regulating the fees, or extending the powers and duties of aldermen, justices of the peace, magistrates or constables;
(18) regulating the management of public schools, the building or repairing of school houses, and the raising of money for such purposes;
(19) fixing the rate of interest;
(20) affecting the estates of minors, or persons under disability;
(21) remitting fines, penalties and forfeitures, and refunding moneys legally paid into the treasury;
(22) exempting property from taxation;
*342 (23) regulating labor, trade, mining and manufacturing;
(24) declaring any named person of age;
(25) extending the time for the assessment or collection of taxes, or otherwise relieving any assessor or collector of taxes from the due performance of his official duties, or his securities from liability;
(26) giving effect to informal or invalid wills or deeds;
(27) summoning or empanelling grand or petit juries;
(28) for limitation of civil or criminal actions;
(29) for incorporating railroads or other works of internal improvements; or
(30) relieving or discharging any person or set of persons from the performance of any public duty or service imposed by general law.
(b) In addition to those laws described by Subsection (a) of this Section in all other cases where a general law can be made applicable, no local or special law shall be enacted; provided, that nothing herein contained shall be construed to prohibit the Legislature from passing:
(1) special laws for the preservation of the game and fish of this State in certain localities; and
(2) fence laws applicable to any subdivision of this State or counties as may be needed to meet the wants of the people.
With respect to the general prohibition against enacting local or special laws, the Supreme Court of Texas has characterized the purpose as "a wholesome one"[14] that "is intended to prevent the granting of special privileges and to secure uniformity of law throughout the State as far as possible."[15] The Court has observed that the historical justification for restrictions of this kind arose from the practice of enacting local and special laws that "at an early period in many of the states ... became 'an efficient means for the easy enactment of laws for the advancement of personal rather than public interests, and encouraged the reprehensible practice of trading and "logrolling.' "[16] Thus a limitation on "private or local" appropriations was included in the Constitution of the Republic of Texas,[17] and later versions of the Texas Constitution also had provisions that limited or prohibited certain local and special laws.[18] The prohibition on local or special *343 laws in its current form was introduced in the post-reconstruction Texas Constitution of 1876,[19] and it was amended to add Subsection (b) in 2011.
The full text of the disputed statute, Water Code Section 13.2475, is as follows:
CERTIFICATES OF PUBLIC CONVENIENCE AND NECESSITY TO PROVIDE SEWER SERVICE IN CERTAIN MUNICIPALITIES.
(a) This section applies only to a municipality:
(1) with a population of more than 95,000;
(2) located in a county that:
(A) borders Lake Palestine; and
(B) has a population of more than 200,000;
(3) that owns and operates a utility that provides sewer service; and
(4) that has an area within the boundaries of the municipality that is certificated to another retail public utility that provides sewer service.
(b) A municipality may provide sewer service to an area entirely within the municipality's boundaries without first having to obtain from the utility commission a certificate of public convenience and necessity that includes the area to be served, regardless of whether the area to be served is certificated to another retail public utility.
(c) Not less than 30 days before the municipality begins providing sewer service to an area certificated to another retail public utility, the municipality shall provide notice to the retail public utility and the utility commission of its intention to provide service to the area.
(d) On receipt of the notice required by Subsection (c), a retail public utility may:
(1) petition the utility commission to decertify its certificate for the area to be served by the municipality; or
(2) discontinue service to the area to be served by the municipality, provided that there is no interruption of service to any customer.
(e) This section may not be construed to limit the right of a retail public utility to provide service in an area certificated to the retail public utility.
(f) This section does not expand a municipality's power of eminent domain under Chapter 21, Property Code.
I. Prohibition of local laws under Article III, Section 56 (a)(2)
While Liberty argued in the trial court that the adoption of Section 13.2475 violated both subsections of Article III, Section 56, in its appeal the City has focused its arguments on one particular provision of Section 56 (a), the prohibition of a local law "regulating the affairs of ... cities." Texas courts have refused to constrain the word "regulating" as used in this context with a "narrow or technical *344 signification."[20] A law regulates the affairs of a city when it "prescribe[s] the rules by which those affairs shall be governed," and a law that brings about changes in those affairs "is regulation of the affairs of [cities] by local or special laws."[21]
The City describes Section 13.2475 as a law that concerns "the removal of monopoly protections from a retail sewer utility" and that is not within any of the prohibited subject areas of Section 56 (a). It argues that the law does not regulate its affairs and thus is not prohibited by Section 56 (a)(2) because the law only removes Liberty's protection from competition and allows, but does not force, the City to provide a service that it already had the power to provide. While Section 13.2475 does have the effect of regulating Liberty, that does not mean that the law does not also regulate the affairs of a city. The challenged statute expressly provides that a "municipality may provide sewer service" in certain areas.[22] The provision of sewer service to the City's residents, which the City admits is a governmental function, is an "affair" of the City.[23]
Distinguishing Maple Run at Austin Municipal Utility District v. Monaghan ,[24] the City notes that Section 13.2475 does not force it to provide sewer service to residents in Liberty's certificated areas, but only allows or authorizes it to do so. It thus contends that the law does not regulate its affairs as contemplated by Section 56 (a)(2).[25] But Maple Run does not stand for the proposition that a law must force a city to act to fall within Section 56 (a)(2)'s prohibition of local laws that regulate the affairs of a city. Indeed, as Liberty notes, the Supreme Court has held at least twice that a statute authorizing, but not forcing, conduct by a local government falls within Section 56 (a)(2).[26]
To the extent the City argues that Article III, Section 56 is inapplicable because it does not prohibit the Legislature's inherent power to repeal laws and that Section 13.2475 's removal of Liberty's exclusivity in its certificated areas is likewise not prohibited, we are not persuaded. The City relies upon Diaz v. State , which concerned the unique circumstances of the *345 constitutionality of an 1891 special law disincorporating the City of San Elizario, which originally had been incorporated by a special act of the Texas Legislature in 1871.[27] Diaz is distinguishable as a complete repeal of a statute, unlike this case's purported partial repeal of an otherwise generally applicable statute, to remove its application as to only one municipality.[28] The Legislature could have authorized the City of Tyler to provide sewer service in Liberty's service area by repealing Section 13.247(a)'s prohibition on municipally owned or operated utilities from providing retail water and sewer utility service within the area certificated to another retail public utility without first having obtained a CCN that includes the areas to be served. A complete repeal of this provision as applied to the entire state would have been within the Legislature's authority, but the limited repeal of the statute as applied to only one municipality implicates the prohibition on local laws. The affirmative legislative act of excepting one locality from the effect of a generally applicable law is precisely what the general prohibition against enacting local laws is designed to prevent, and characterizing the statute as a partial repeal does not change its fundamental character as a prohibited local law.
Because Section 13.2475 authorizes the City to provide sewer service in Liberty's certificated area, we conclude that it regulates the City's affairs and is therefore a prohibited local law under Article III, Section 56(a)(2).[29]
II. Other constitutional authority
In its second issue, the City argues that regardless of our conclusion about the prohibition of local laws under Article III, Section 56, the Legislature was "otherwise" authorized to enact Section 13.2475 as a local law by Article I, Section 17(d) of the Texas Constitution, relating to the Legislature's control of privileges and franchises,[30] and Article I, Section 26, relating to the prohibition of perpetuities and monopolies.[31]
The City's brief in support of these arguments relies heavily on a 1977 treatise that characterized the "otherwise provided" language of Section 56 (before its 2011 amendment) as "a loophole that a truckload of local laws can slip through."[32]
*346 But while various provisions of the Texas Constitution do explicitly authorize legislation by local or special law,[33] Sections 17(d) and 26 of Article I do not.
Moreover, the City makes no attempt to explain why the authority to pass local or special laws should be implied after the Texas Constitution was amended in 2011 to specify that in addition to the categories of legislation in which local or special laws are specifically prohibited,[34] "in all other cases where a general law can be made applicable, no local or special law shall be enacted."[35] The Legislature could have authorized the City to provide sewer service in Liberty's service area by repealing in its entirety Section 13.247(a)'s prohibition on municipally owned or operated utilities from providing retail water and sewer utility service within the area certificated to another retail public utility without first having obtained a CCN that includes the areas to be served.
The City argues that Article I, Section 17(d) provides that the privileges and franchises granted by the Legislature are "subject to the control thereof," but it provides no argument why that cannot be done by general law, as has been done already in the Water Code. The City argues that Article I, Section 26 prohibits perpetuities and monopolies, but it provides no argument why the statute in controversy in this appeal is a perpetuity or monopoly that should be prohibited by a local law and should not by the same logic be prohibited in all places by a general law.
Article III, Section 56(b) plainly provides that local laws are prohibited in all cases "where a general law can be made applicable." We therefore reject the argument that authority to enact Section 13.2475 as a local law should be implied from Article I, Sections 17(d) or 26.
Conclusion
The City of Tyler's legislative strategy to uniquely exempt itself from the operation of Water Code Section 13.247(a) was a violation of the Texas Constitution's default preference for laws of general applicability and general prohibition of local laws. We therefore affirm the judgment of the trial court.

The Federalist No. 57, at 350, 352 (Clinton Rossiter ed., 1961).

Id. at 353.

See Tex. Water Code § 13.242.

See id. § 13.255.

See id. § 13.247.

See id. § 13.247(a) ("a municipally owned or operated utility may not provide retail water and sewer utility service within the area certificated to another retail public utility without first having obtained from the utility commission a certificate of public convenience and necessity that includes the areas to be served").

Hearing on Tex. S.B. 789 Before the Senate Committee on Agriculture, Water & Rural Affairs, 84th Leg., R.S. 4, 6 (Apr. 13, 2015) (transcript available from Senate Staff Services Office).

Id. at 6.

Id. at 6-7.

Tex. Water Code § 13.2475(b).

Id. § 13.2475(a).

"While the terms "local law" and "special law" have at times been used interchangeably, a local law is one limited to a specific geographic region of the State, while a special law is limited to a particular class of persons distinguished by some characteristic other than geography." Maple Run at Austin Mun. Util. Dist. v. Monaghan , 931 S.W.2d 941, 945 (Tex. 1996) ; see also Charles W. "Rocky" Rhodes, The Texas Constitution in State and Nation: Comparative State Constitutional Law in the Federal System 506 (2014).

See Christus Health Gulf Coast v. Aetna, Inc. , 397 S.W.3d 651, 653 (Tex. 2013).

Miller v. El Paso Cty. , 136 Tex. 370, 150 S.W.2d 1000, 1001 (1941).

Id. at 1001 ; accord Maple Run , 931 S.W.2d at 945 ; Pub. Util. Comm'n v. Sw. Water Servs. , 636 S.W.2d 262, 264 (Tex. App.-Austin 1982 writ ref'd n.r.e.) ; see also Rodriguez v. Gonzales , 148 Tex. 537, 227 S.W.2d 791, 793 (1950) (stating that the "primary purpose" for adoption of Section 56"was to secure that uniformity in the application of law which is essential to an ordered society"). See generally 2 Norman J. Singer & Shambie Singer, Sutherland Statutes and Statutory Construction § 40.1 (7th ed. 2017); Rhodes, supra note 12, at 505-07.

Miller , 150 S.W.2d at 1001 (quoting 25 Ruling Case Law § 68, at 820 (1931) ).

Repub. Tex. Const. of 1836, art. I, § 25 ("No money shall be drawn from the public treasury but in strict accordance with appropriations made by law; and no appropriations shall be made for private or local purposes, unless two thirds of each House concur in such appropriations.").

E.g. , Tex. Const. of 1869, art. III, § 25 ("The Legislature shall not authorize, by private or special law, the sale or conveyance of any real estate belonging to any person, or vacate or alter any road laid out by legal authority, or any street in any city of village, or in any recorded town plat, but shall provide for the same by general laws."); id. art. XII, § 13 ("General laws, regulating the adoption of children, emancipation of minors, and the granting of divorces, shall be made; but no special law shall be enacting relating to particular or individual cases."); Tex. Const. of 1869, art. XII, § 40 (as amended, 1873) (providing that the Legislature "shall not pass local or special laws" in specified enumerated cases, and in "all other cases where a general law can be made applicable, no special law shall be enacted").

There was no recorded debate concerning these provisions. See 1 George D. Braden et al., The Constitution of the State of Texas: An Annotated and Comparative Analysis 273 (1977). The language appears to have been borrowed from the Pennsylvania Constitution of 1873 and then modified with several amendments during the 1875 constitutional convention. See id. at 272-73 (citing Journal of the Constitutional Convention of the State of Texas , 1875, at 165-66, 267-68, 504).

E.g. , Hall v. Bell Cty. , 138 S.W. 178, 183 (Tex. Civ. App.-Austin 1911), aff'd , 105 Tex. 558, 153 S.W. 121 (1913) ; Ward v. Harris Cty. , 209 S.W. 792, 795 (Tex. Civ. App.-Galveston 1919, writ ref'd) ; see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 69-77 (2012) (explaining that words in a statute "are to be understood in their ordinary, everyday meanings-unless the context indicates that they bear a technical sense").

Austin Bros. v. Patton , 288 S.W. 182, 186 (Tex. Comm'n App. 1926), modified , 290 S.W. 153 (Tex. Comm'n App. 1927).

Tex. Water Code § 13.2475(b).

See Tex. Const . art. III, § 56 (a)(2) ("The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing ... regulating the affairs of ... cities...."); Austin Bros. , 288 S.W. at 187 ; cf. Tex. Civ. Prac. & Rem. Code § 101.0215(32) (subjecting municipalities to civil liability for damages arising from their governmental functions, including water and sewer service).

931 S.W.2d 941 (Tex. 1996).

See id. at 948-49 (holding unconstitutional under Section 56 a local law that required a municipality to take ownership of a dissolving municipal utility district's assets and to assume its debts).

See Rodriguez , 227 S.W.2d at 793-95 (quoting Section 56(a)(2) and holding that law authorizing county commissioners' court to employ attorney to prosecute delinquent tax suits was prohibited local and special law); Miller , 150 S.W.2d at 1001-02 (holding that law authorizing county commissioners' court to levy tax to raise revenue to advertise and promote growth of county was an unconstitutional local law).

68 S.W.3d 680, 682-83 (Tex. App.-El Paso 2000, pet. denied).

For the same reason, Op. Tex. Att'y Gen. No. JC-0101 (1999) (which addressed the same circumstances at issue in Diaz ) and the main authority it relied upon, Central Wharf & Warehouse Co. v. City of Corpus Christi , 23 Tex.Civ.App. 390, 57 S.W. 982 (1900, writ ref'd), are likewise distinguishable.

See Austin Bros. , 288 S.W. at 186. Because of our resolution of this issue, it is unnecessary for us to separately analyze the City's argument that Section 13.2475 does not violate Section 56 (b) and its separate prohibition of local laws in "cases where a general law can be made applicable."

Article I, Section 17(d) of the Texas Constitution provides:
§ 17. Taking, damaging or destroying property for public use; special privileges and immunities; control of privileges and franchises
....
(d) ... all privileges and franchises granted by the Legislature, or created under its authority, shall be subject to the control thereof.

Article I, Section 26 of the Texas Constitution provides:
§ 26. Perpetuities and monopolies; primogeniture or entailments
Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed....

1 Braden et al., supra note 19, at 279.

See, e.g. , Tex. Const . art. III, § 56 (b) (specifying that nothing in the general prohibition of local or special laws shall be construed to prohibit the Legislature from passing "special laws for the preservation of the game and fish of this State in certain localities"); id. art. V, § 7 ("The Legislature shall have power by General or Special Laws to make such provisions concerning the terms or sessions of each Court as it may deem necessary."); id. art. VIII, § 9(e) ("The Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws.").

See id. art. III, § 56(a).

Id. art. III, § 56(b).